**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JOSE LUIS BUENROSTRO,
*Defendant-Appellant.*

No. 08-16185

D.C. No.
2:95-CR-00504-
WBS-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted
October 5, 2010—San Francisco, California

Filed March 23, 2011

Before: Susan P. Graber and Andrew J. Kleinfeld,
Circuit Judges, and Donald W. Molloy,* District Judge.

Per Curiam Opinion

---

*Donald W. Molloy, United States District Judge for the District of
Montana, sitting by designation.

## COUNSEL

Walter K. Pyle, Berkeley, California, for the movant-appellant.

Matthew D. Segal, Assistant United States Attorney, Sacramento, California, for the respondent-appellee.

## OPINION

PER CURIAM:

Appellant Jose Luis Buenrostro was tried and convicted on a charge of conspiracy to manufacture methamphetamine. The offense involved more than thirty-one kilograms of methamphetamine. Because Buenrostro had two prior felony drug convictions, the court sentenced him to a mandatory minimum term of life imprisonment without release. 21 U.S.C. §§ 846, 851(d)(1), 841(a)(1), (b)(1)(A)(viii) (1995). We affirmed Buenrostro's conviction on direct appeal. He then

moved the district court to vacate his sentence under 28 U.S.C. § 2255. The district court denied that motion on its merits.

After the district court concluded Buenrostro's § 2255 proceeding, Buenrostro moved the district court to reopen it under Federal Rule of Civil Procedure 60(b) due to a newly discovered ineffective assistance of counsel claim. According to Buenrostro, his lawyer had received a generous plea offer five months before his trial but never told Buenrostro about it. Had Buenrostro accepted that offer, his maximum sentencing exposure would have been fourteen years. But, because (he alleges) Buenrostro's lawyer did not realize that Buenrostro faced the possibility of a life sentence, the lawyer rejected the offer without giving it to Buenrostro. Buenrostro asked the district court to set aside its denial of his original § 2255 motion and to hold an evidentiary hearing on his new claim.

The government moved to dismiss Buenrostro's motion as, in substance, an unauthorized second or successive § 2255 motion. 28 U.S.C. §§ 2255(h), 2244(b)(3)(A) (2007). The district court agreed with the government and dismissed Buenrostro's motion for lack of jurisdiction. *Burton v. Stewart*, 549 U.S. 147, 149 (2007) (per curiam). It also granted a certificate of appealability.

We have jurisdiction pursuant to 28 U.S.C. § 2253(a). Reviewing de novo, *United States v. Lopez*, 577 F.3d 1053, 1059 (9th Cir. 2009), we affirm.

## Legal Analysis

The plain text of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") precludes Buenrostro from filing a "second or successive" § 2255 motion unless he can show either that he relies on a new rule of constitutional law, § 2255(h)(2), or "that no reasonable factfinder would have

found [him] guilty of the offense," § 2255(h)(1). Buenrostro concedes that he cannot meet either of those standards. Consequently, his appeal presents two different questions. First, is Buenrostro entitled to reopen his original § 2255 proceeding under Federal Rule of Civil Procedure 60(b)? And, if not, does § 2255(h) allow him to file a second-in-time motion on his newly discovered claim even though it does not rely on a new rule of constitutional law or prove his innocence?

## A.  Rule 60(b)

**[1]** In *Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005), the Supreme Court held that a state prisoner may not rely on Rule 60(b) to raise a new claim in federal habeas proceedings that would otherwise be barred as second or successive under § 2254. Because § 2254 is nearly identical to § 2255 in substance, the Sixth, Seventh, and Tenth Circuits have applied *Gonzalez* to Rule 60(b) motions to reopen § 2255 proceedings. *Curry v. United States*, 507 F.3d 603, 604-05 (7th Cir. 2007); *Nailor v. United States (In re Nailor)*, 487 F.3d 1018, 1021-23 (6th Cir. 2007); *United States v. Nelson*, 465 F.3d 1145, 1147 (10th Cir. 2006). We agree with our sister circuits and hold that *Gonzalez* applies to such motions.

**[2]** Applying *Gonzalez* here, we must treat Buenrostro's Rule 60(b) motion as another § 2255 motion if it contains a "claim." 545 U.S. at 530. *Gonzalez* defines "claim" in various ways, including "a new ground for relief." *Id.* at 532. Section 2255(a) prescribes the grounds for relief available to a § 2255 movant. We begin, therefore, by looking to see whether Buenrostro seeks to reopen his § 2255 proceedings based on a new ground for relief specified in § 2255(a).[1] We see that he does.

---

[1]Section 2255(a) provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Consti-

Buenrostro "claim[ed] the right to be released upon the ground," as § 2255(a) says, "that the sentence was imposed in violation of the Constitution," specifically, his Sixth Amendment right to the effective assistance of counsel. Under *Gonzalez*, we must treat Buenrostro's motion as a § 2255 motion.

**[3]** *Gonzalez* recognized that a "defect in the integrity of the federal habeas proceedings," such as "fraud on the habeas court," might justify reopening § 2255 proceedings under Rule 60(b). 545 U.S. at 532 & n.5. Buenrostro argues that his Rule 60(b) motion demonstrates such a defect, and that his is the rare case, *id.* at 535, in which extraordinary circumstances, Fed. R. Civ. P. 60(b)(6), justify reopening the final order denying his § 2255 motion. He says that he did not know, and had no reason to inquire, during the course of his § 2255 litigation, whether counsel received but did not relay a viable plea offer.

**[4]** Buenrostro misunderstands the meaning of *Gonzalez*. To show a defect in the integrity of his first § 2255 proceeding, Buenrostro must point to something that happened during that proceeding that rendered its outcome suspect. We have explained that "[f]raud on the court must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Abatti v. Comm'r*, 859 F.2d 115, 118 (9th Cir. 1988) (internal quotation marks omitted).

**[5]** We see no such plan or scheme at work in Buenrostro's first § 2255 proceeding that could warrant relief under Rule 60(b). In his first § 2255 motion, Buenrostro claimed ineffec-

<hr>

tution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

tive assistance of counsel based on his trial lawyer's failure to object to the admission of evidence of Buenrostro's prior felony convictions, his lawyer's refusal to call Buenrostro to testify, and his lawyer's incorrect advice about the consequences of not testifying. The district court examined those claims on their merits. The court determined that the lawyer's assistance was deficient but that Buenrostro could not demonstrate prejudice from any of his lawyer's errors. Nothing about that proceeding suggests that "the judicial machinery [did] not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Gumport v. China Int'l Trust & Inv. Corp. (In re Intermagnetics Am., Inc.)*, 926 F.2d 912, 916 (9th Cir. 1991) (defining "fraud upon the court"). That Buenrostro did not raise in his first § 2255 proceeding the claim he wants to raise here does not render the adjudication of the claims that he *did* raise suspect.

**[6]** Because Buenrostro wants to bring a new claim for relief, wholly independent of the claims adjudicated in his first § 2255 proceeding, his Rule 60(b) motion must be treated as a § 2255 motion. We therefore must decide whether AEDPA allows him to file a second § 2255 motion.

## B.   Second-in-Time Motions Under AEDPA

Buenrostro's motion is a § 2255 motion, not a Rule 60(b) motion. To file it, Buenrostro needs our permission. 28 U.S.C. § 2255(h). We turn, therefore, to whether § 2255(h) allows us to certify his motion.

**[7]** Section 2255(h) provides:

> A second or successive motion must be certified . . . by a panel of the appropriate court of appeals to contain—
>
>> (1)   newly discovered evidence that, if proven and viewed in light of the evi-

dence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

The plain text of § 2255(h) clearly prevents Buenrostro from filing this motion. His new claim neither bears on his innocence of the underlying crime nor turns on a new rule of constitutional law. If we interpret § 2255(h) according to its plain meaning, we could not allow Buenrostro's new motion to go forward.

Although the Supreme Court has not decided a post-AEDPA case concerning the meaning of "second or successive" under § 2255(h) and Congress did not define that term, Buenrostro relies on the Supreme Court's decisions under § 2244(b)(2) to advocate for an exception in his case. Section 2244(b)(2) resembles § 2255(h).[2] It limits state prisoners from

---

[2]Section 2244(b)(2) provides:

A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed

bringing newly discovered claims in a second or successive federal habeas corpus application unless such claims either clearly and convincingly prove the prisoner's innocence or rely on a new rule of constitutional law. We assume, without deciding, that the Court's interpretation of "second or successive" for purposes of § 2244(b)(2) applies to § 2255(h). Even if it does, we cannot certify Buenrostro's motion.

**[8]** In *Magwood v. Patterson*, ___ U.S. ___, 130 S. Ct. 2788, 2799 (2010), seven justices agreed that "second or successive" is "a habeas 'term of art'" that "incorporates the pre-AEDPA abuse-of-the-writ doctrine." *Id.* at 2804 (Kennedy, J., dissenting); *id.* at 2797 (majority op.); *see also id.* at 2804 (Kennedy, J, dissenting) (explaining that, under the abuse-of-the-writ doctrine, a petitioner abused the writ by "raising a claim in a subsequent petition that he could have raised in the first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice" (internal quotation marks omitted)). That statement reaffirms every federal appellate court's repeated recognition that the term "second or successive" is not to be taken literally but is "informed by" the abuse-of-the-writ doctrine. *United States v. Lopez*, 577 F.3d 1053, 1063 n.8 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 1718 (2010).

Buenrostro urges us to eschew the literal interpretation of § 2255(h) and to apply the abuse-of-the-writ doctrine here. He relies principally on two Supreme Court cases that examined second-in-time federal habeas applications raising claims that had not ripened for adjudication at the time the first petition was litigated. *Panetti v. Quarterman*, 551 U.S. 930, 947

---

in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(2007) (involving claims under *Ford v. Wainwright*, 477 U.S. 399 (1986) (holding that an incompetent person may not be executed)); *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998) (same). In *Martinez-Villareal*, 523 U.S. at 644-45, the petitioner presented a *Ford* claim in his first federal habeas petition, which the court dismissed as unripe. The rest of his claims were adjudicated. When the petitioner sought to refile his *Ford* claim after his execution date was set, the Court said it could not be "second or successive," because "[t]here was only one application for habeas relief, and the District Court ruled (or should have ruled) on each claim at the time it became ripe." 523 U.S. at 643.

In *Panetti*, 551 U.S. at 937, the petitioner filed a federal habeas petition challenging his conviction but did not state a *Ford* claim. The district court denied his petition on its merits. *Id.* After the state scheduled his execution date, the petitioner filed a second habeas petition alleging, for the first time, that he was incompetent to be executed. *Id.* at 938. The Supreme Court granted certiorari to decide whether that petition constituted an improper "second or successive" habeas application under § 2244(b). *Id.*

The Court held that the petition was not "second or successive" within the meaning of § 2244(b) because "Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture presented here: a § 2254 application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe." *Id.* at 945. The Court looked at the purposes underlying AEDPA and reasoned that "[a]n empty formality requiring prisoners to file unripe *Ford* claims neither respects the limited legal resources available to the States nor encourages the exhaustion of state remedies." *Id.* at 946. Accordingly, the Court declined to construe AEDPA, which Congress "implemented to further the principles of comity, finality, and federalism, in a manner that would require unripe (and, often, factually

unsupported) claims to be raised as a mere formality, to the benefit of no party." *Id.* at 947.

*Martinez* and *Panetti* do not apply only to *Ford* claims. Prisoners may file second-in-time petitions based on events that do not occur until a first petition is concluded. A prisoner whose conviction and sentence were tested long ago may still file petitions relating to denial of parole, revocation of a suspended sentence, and the like because such claims were not ripe for adjudication at the conclusion of the prisoner's first federal habeas proceeding. *Hill v. Alaska*, 297 F.3d 895, 898-99 (9th Cir. 2002), *cited in Magwood*, 130 S. Ct. at 2805; *see also Benchoff v. Colleran*, 404 F.3d 812, 817 (3d Cir. 2005); *Medberry v. Crosby*, 351 F.3d 1049, 1062 (11th Cir. 2003); *James v. Walsh*, 308 F.3d 162, 168 (2d Cir. 2002); *Crouch v. Norris*, 251 F.3d 720, 725 (8th Cir. 2001); *In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998) (order); *Walker v. Roth*, 133 F.3d 454, 455 (7th Cir. 1997) (per curiam).

Buenrostro asks us to broaden the rule announced in *Martinez-Villareal* and *Panetti* so that it permits claims that *were ripe* at the conclusion of a first § 2255 proceeding but *were not discovered* until afterward. Buenrostro relies heavily on our opinion in *Lopez* to support his view that § 2255(h) allows us to certify such claims. In *Lopez*, 577 F.3d at 1062-66, we examined *Panetti* to decide whether § 2255(h) barred a second-in-time § 2255 motion based on a newly discovered *Brady*[3] claim. We acknowledged that *Panetti*'s reasoning does not necessarily confine its reach solely to *Ford* claims. *Id.* at 1063. And we understood that *Panetti* cautioned us not to interpret AEDPA "in a way that would foreclose any federal review of a constitutional claim . . . absent a clear indication that Congress intended that result." *Id.*

---

[3]*Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

We recognized, however, two reasons to think that Congress clearly intended to foreclose review of *some* constitutional claims discovered after the completion of a prisoner's § 2255 proceeding. First, "§ 2255(h)(1) contains an express statutory standard for dealing with 'second or successive' claims based on 'newly discovered evidence.' " *Id.* at 1065. Second, even a literal reading § 2255(h) does not bar all newly discovered, second-in-time *Brady* claims. Section 2255(h)(1) allows us to certify such claims when they prove by clear and convincing evidence a prisoner's innocence. *Id.* In the end, we did not decide whether § 2255(h) barred the movant's newly discovered *Brady* claim because he could not establish prejudice even under the abuse-of-the-writ doctrine. *Id.* at 1066.

**[9]** Buenrostro's ineffective assistance of counsel claim does not suffer from the same infirmity as the *Brady* claim in *Lopez*. We do not doubt that, under the abuse-of-the-writ doctrine, the federal courts could adjudicate his claim. But we think that the words of § 2255(h) indicate Congress' clear intent to prohibit us from certifying second-in-time claims, ripe at the time of a prisoner's first § 2255 proceeding but not discovered until afterward, unless such claims either rely on a new, retroactive rule of constitutional law or clearly and convincingly prove the prisoner's innocence.

**[10]** As we said in *Lopez*, AEDPA "codif[ied] the judicially established principles reflected in the abuse-of-the-writ doctrine and *further restrict[ed]* the availability of relief to habeas petitioners." *Id.* at 1060-61 (emphasis added). Buenrostro had a ripe ineffective assistance of counsel claim that he could have brought in his first § 2255 motion. He says that he had no reason to know he could bring such a claim, but that is not determinative to his right to relief. His second § 2255 motion is "second or successive." As a "modified res judicata rule," *Felker v. Turpin*, 518 U.S. 651, 664 (1996), the second or successive bar marks the end point of litigation even where compelling new evidence of a constitutional vio-

lation is discovered, § 2255(h)(1). The only prisoner who will not reach that point is the one who obtains new evidence that could clearly and convincingly prove his innocence or who has the benefit of a new, retroactive rule of constitutional law. Buenrostro is not that prisoner. His motion is barred.

AFFIRMED.