**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| GEORGE H. GAGE, *Petitioner*, | No. 13-73438 |
| v. | |
| KEVIN CHAPPELL, *Respondent*. | OPINION |

Application to File Second or Successive
Petition under 28 U.S.C. § 2254

Argued and Submitted April 7, 2015
Submission Vacated April 7, 2015
Resubmitted July 16, 2015
Pasadena, California

Filed July 20, 2015

Before: Dorothy W. Nelson, A. Wallace Tashima,
and Richard R. Clifton, Circuit Judges.

Opinion by Judge Tashima

## SUMMARY[*]

### Habeas Corpus

The panel denied California prisoner George Gage's application for permission to file a second or successive habeas petition under 28 U.S.C. § 2254 in a case in which Gage, who was convicted of sexually assaulting his stepdaughter, sought to bring a *Brady* claim and an ineffective assistance of counsel claim, neither of which was included in his first federal habeas petition.

The panel held that Gage's argument that his new petition is not "second or successive" within the meaning of the AEDPA is foreclosed by *United States v. Buenrostro*, 638 F.3d 720 (9th Cir. 2011), because the factual predicates for his claims existed at the time of his first petition.

The panel held that Gage is barred from bringing a successive petition under 28 U.S.C. § 2244(b)(2)(B) because he failed to exercise due diligence by failing to include the *Brady* claim in his original petition, and that the actual innocence exception articulated in *Schlup v. Delo*, 513 U.S. 298 (1995), does not abrogate § 2244(b)(2)(B).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Tony Faryar Farmani (argued), Farmani, APLC, San Diego, California, for Petitioner.

Kamala D. Harris, Attorney General of California, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, David C. Cook (argued), Deputy Attorney General, Los Angeles, California, for Respondent.

## OPINION

TASHIMA, Circuit Judge:

California prisoner George Gage applies for permission to file a second or successive habeas petition under 28 U.S.C. § 2254. Gage, who was convicted in California court of sexually assaulting his stepdaughter, seeks to bring a *Brady*[1] claim and an ineffective assistance of counsel claim, neither of which was included in his first federal habeas petition. He asserts actual innocence and argues that his petition thus falls into the miscarriage of justice exception articulated in *Schlup v. Delo*, 513 U.S. 298 (1995), thereby excusing him from the limitations on second or successive petitions imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(b)(2)(B). We conclude, first, that Gage is barred from bringing a successive petition under § 2244(b)(2)(B) because of his  failure to exercise due

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

diligence, and, second, that the *Schlup* exception does not abrogate § 2244(b)(2)(B). We therefore deny the application.

## I.

In 1985, while living in Texas, Gage met Wanda, a mother of two children, Marian and Lionel. Gage and Wanda moved in together and were married in 1990. Marian was then nine years old and Lionel was seven. The family moved to California in 1993.

In April 1995, Wanda learned that Gage had pursued an affair with another woman that resulted in a child. Gage had been siphoning money from family funds to pay child support. These revelations led to the marriage's acrimonious collapse. Wanda and the children quickly moved back to Texas.

Several years after the split, in 1998, Marian told Wanda that Gage had sexually abused her while they were living in California. Marian and Wanda reported Gage to Texas authorities approximately two months later. According to the initial police report, Marian indicated that Gage engaged in inappropriate touching but did not have intercourse with her. Later, however, Marian stated that Gage actually had intercourse with her on numerous occasions. These accusations surfaced during a tumultuous time in Marian's life. Around the time she reported the abuse, Marian apparently attempted suicide on several occasions and spent a significant amount of time hospitalized for mental illness.

In response to Marian's allegations, the Los Angeles County District Attorney charged Gage with one count of continuous sexual abuse of a child (Cal. Penal Code § 288.5),

nine counts of forcible rape (Cal. Penal Code § 261(a)(2)), and nine counts of lewd acts against a child (Cal. Penal Code § 288(a)).

Prior to trial,[2] the prosecution sought to exclude Marian's medical records as subject to the doctor-patient privilege and the defense did not object. The trial judge questioned the prosecution about the content of those records:

> I take it that the statements – that any statement [Marian] might have made to the psychiatrist would have been turned over, if they were not – if they were inconsistent.

The prosecutor responded:

> I . . . contacted the therapist, communicated with her directly, and she indicated that the victim had always been consistent that the molestation had taken place . . . . And then I tried to communicate with the hospitals, and . . . there was nothing that I found, in response to the court's inquiry, that would indicate that there were any inconsistencies that she had ever said. For example, "no that never

---

[2] California authorities initially offered Gage a plea deal that would have resulted in a sentence ranging between probation and approximately sixteen years' imprisonment. (The court described the likely sentence that would have resulted from this plea as "about five years, plus.") Gage declined the offer.

happened," or that "I made all that stuff up,"
or anything like that.

No further discussion of the medical records occurred.

At Gage's first trial, Marian did not testify and the jury hung. At Gage's second trial, Marian's testimony provided the core of the case against Gage. According to Marian, Gage began abusing her when the family moved to California. The abuse typically occurred once and later twice a week. Marian testified that Gage told her the incidents were a secret and threatened to hurt her, her mother, or her brother if she reported it. Wanda also testified that on one occasion Gage hit her in front of the children, and that he demeaned her and encouraged the children to call her names. However, Wanda observed no indications of sexual abuse while living with Gage. A physical exam of Marian did not show signs of abuse.

The defense's theory at the second trial was that either Marian or Wanda had manufactured the allegations against Gage in retribution for his extramarital affair. Gage took the stand and denied the allegations. A defense expert witness also testified that, based on an interview, Gage "did not meet the diagnostic criteria for pedophilia." The second trial resulted in Gage's conviction on all counts contained in the indictment.

At the beginning of the sentencing phase, the trial judge requested the prosecution provide Marian's medical and psychiatric records. When the prosecution protested, the judge indicated that if the state did not comply, she would set aside the verdict. The prosecution subsequently turned the medical records over to the court for *in camera* review and

Gage filed a motion for a new trial on the ground that insufficient evidence supported the jury's verdict.

After reviewing the medical records *in camera*, the court granted the motion for a new trial and vacated Gage's convictions. The trial court concluded that the testimony of the victim and her mother was not credible, leaving insufficient evidence to support the jury's verdict. The court explained that it had harbored doubts about the veracity of Marian's testimony during trial because it "appeared to be contrived." The court then concluded that evidence in the medical records rendered Marian's testimony an insufficient basis for conviction as a matter of law. Several items in the medical records grounded this conclusion: (1) Wanda apparently described Marian to a mental health professional as "a pathological liar [who] lives her lies"; (2) Marian's accusations followed a large fight with her mother after Wanda caused Marian's then-boyfriend to be sent to prison; and (3) Marian made only fleeting references to having been sexually abused during the course of her psychological treatment.

The State appealed to the California Court of Appeal, which reinstated the conviction. It held that the trial court improperly relied on the medical records, which were never before the jury, in granting the new trial. The Court of Appeal also directed that the matter be reassigned. A new judge sentenced Gage to 70 years' imprisonment.

Since his conviction, Gage has filed or attempted to file three petitions. Gage first petitioned the California Court of Appeal for the disclosure of Marian's medical records on the ground that those records constituted *Brady* material. In a short opinion, the Court of Appeal denied the petition. In so

doing, it noted that "[t]here is nothing in [the] records which could be of assistance to defendant," and concluded that Gage "failed to demonstrate that there is any merit to any of [his] constitutional contentions . . . ." The Court of Appeal, however, did not explain why the contents of the medical records failed to meet the *Brady* standard and did not elaborate on the records' content. The California Supreme Court summarily denied a hearing of Gage's appeal. Since that time, the State has refused to turn over Marian's medical records to Gage, his counsel, or the court.

In 2005, Gage filed a *pro se* habeas petition in the U.S. District Court for the Central District of California. Although Gage mentioned the possibility of a *Brady* claim in this petition, it focused on unrelated procedural defects in Gage's trial and conviction. Without addressing the possibility of a *Brady* claim, the district court adopted a magistrate judge's findings and recommendations and denied the petition. In April 2014, the Ninth Circuit denied Gage's request for a certificate of appealability, and in August 2014, it denied his motion for reconsideration of that denial. In his motion for reconsideration, Gage did not argue that he had, in fact, raised the *Brady* claim in his first petition.

In September 2013, Gage filed a *pro se* application before this court for leave to file a second or successive habeas petition under 28 U.S.C. § 2254, including a *Brady* claim relating to the State's failure to produce Marian's medical records and an ineffective assistance of counsel claim. We appointed counsel and ordered supplemental briefing.

## II.

The AEDPA places significant limitations on the ability of petitioners to bring second-in-time habeas petitions:

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless –
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)      (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
>               (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2). Additionally, before a federal district court may entertain a second or successive petition, the appropriate circuit court must issue an order authorizing the

district court to consider the petition. 28 U.S.C. § 2244(b)(3).
We will issue such an order and grant an application for a
second or successive petition if the would-be petitioner makes
a "prima facie showing" that his petition would meet the
requirements of § 2244(b)(2). *Woratzeck v. Stewart*,
118 F.3d 648, 650 (9th Cir. 1997) (per curiam) (quoting
28 U.S.C. § 2244(b)(3)).

Gage argues first that he need not satisfy § 2244(b)(2)
because his new petition is not a "second or successive"
petition within the meaning of the AEDPA. The Supreme
Court has indicated that "second or successive" is "a habeas
'term of art' that incorporates the pre-AEDPA abuse-of-the-
writ doctrine." *United States v. Buenrostro*, 638 F.3d 720,
724 (9th Cir. 2011) (per curiam) (quoting *Maywood v.
Patterson* 561 U.S. 320, 332–33, 344–45 (2010)).
Depending on the substance of the underlying constitutional
claim, a second-in-time petition may or may not be
considered second or successive under § 2244(b)(2). In
*Panetti v. Quarterman*, for example, the Supreme Court
considered a second-in-time petition that argued carrying out
the petitioner's capital sentence would be unconstitutional
under *Ford v. Wainwright* because the petitioner had
developed a mental illness rendering him insane.[3] 551 U.S.
930, 934–35, 946–47 (2007). The Court concluded that the
petition was not second or successive, because the factual
predicate for the *Ford* claim did not exist at the time the
petitioner filed his first petition – because at that time the
petitioner was not yet insane. *See id.* at 946–47. According
to the Court, this interpretation of § 2244(b)(2) made sense

---

[3] *See Ford v. Wainwright*, 477 U.S. 399, 410 (1986) (holding that the
Eighth Amendment prohibits states from executing legally insane
prisoners).

because "[a]n empty formality requiring prisoners to file unripe . . . claims neither respects the limited legal resources available to the States nor encourages the exhaustion of state remedies." *Id.* at 946.

Gage contends that his new petition falls into the *Panetti* exception and does not qualify as a second or successive petition. In *Buenrostro*, however, we adopted a constrained reading of *Panetti*'s reach. *See* 638 F.3d at 721. *Buenrostro* involved a would-be petitioner seeking to bring a second-in-time habeas petition alleging ineffective assistance of counsel based on newly discovered evidence. *Id*. In considering whether such a petition would be subject to the second-or-successive bar under 28 U.S.C. § 2255(h),[4] we distinguished between petitions containing claims, the factual predicate of which came into being after the first habeas petition – such as the mental incompetency claim in *Panetti* – and those containing "claims that were ripe at the conclusion of a first [habeas] proceeding but were not discovered until afterward" – such as the ineffective assistance of counsel claim in *Buenrostro*. *Id.* at 725 (emphasis omitted). We held that the second category of claims, those in which the factual predicate existed at the time of the first habeas petition, indeed qualify as second or successive under the AEDPA. *Id.* at 725–26; *accord United States v. Obeid*, 707 F.3d 898, 902–03 (7th Cir. 2013); *Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1259–60 (11th Cir. 2009) (per curiam).

---

[4] 28 U.S.C. § 2255(h) sets forth the second or successive bar for federal, as opposed to state, habeas petitions. It is analogous to § 2244(b)(2)(B), the statute that governs successive habeas petitions challenging state convictions, at issue here. *See Buenrostro*, 638 F.3d at 723–24.

*Buenrostro* forecloses Gage's argument. The factual predicate for Gage's *Brady* claim developed, at the latest, when the state trial judge commented on the contents of Marian's medical records. The predicate for the ineffective assistance of counsel claim matured at trial.**[5]** This is not a case where the basis for the would-be petitioner's second petition did not exist or was unripe when the first petition was filed. Thus, the *Panetti* exception to § 2244(b)(2)'s plain text does not apply.

We acknowledge that Gage's argument for exempting his *Brady* claim from the § 2244(b)(2) requirements has some merit. Under our precedents as they currently stand, prosecutors may have an incentive to refrain from disclosing *Brady* violations related to prisoners who have not yet sought collateral review. *See United States v. Lopez*, 577 F.3d 1053, 1064–65 (9th Cir. 2009). But as a three-judge panel, we are bound to follow the teaching of *Buenrostro*. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc).

## III.

Because Gage's new petition qualifies as a second-or-successive petition, we turn to whether Gage has established a prima facie case that would meet the requirements of § 2244(b)(2). Gage has not argued that his claim relies on a new rule of constitutional law, so we ask (i) whether the

---

**[5]** Gage's ineffective assistance of counsel claims all relate to his former counsel's performance before the trial court. They include: (1) counsel's failure properly to impeach Marian; (2) counsel's failure to investigate Marian's medical records; and (3) counsel's failure to present additional evidence that Gage was not a pedophile. Gage does not allege any ineffective assistance of counsel occurring after he filed his first habeas petition.

factual predicate for Gage's claim could have been discovered previously through the exercise of due diligence, and (ii) whether the facts underlying Gage's claim would be sufficient to establish that, but for constitutional error, no reasonable factfinder would have found Gage guilty. *See* 28 U.S.C. § 2244(b)(2)(B).

We note the difficulty in attempting to evaluate whether Gage has satisfied the actual innocence standard under § 2244(b)(2)(B)(ii) because the State has refused to provide access to the potential *Brady* material – Marian's medical records. Although we are disturbed by this refusal, we do not confront whether the State should have disclosed the medical records because Gage cannot satisfy the due diligence requirement under § 2244(b)(2)(B)(i).

Under § 2244(b)(2)(B)(i), a petitioner fails to show due diligence regarding a claim by omitting that claim from his initial habeas petition, provided the claim's factual predicate was known or reasonably discoverable at the time. *See Babbitt v. Woodford*, 177 F.3d 744, 746–47 (9th Cir. 1999) (per curiam). The factual predicate for Gage's *Brady* claim became known to him, at the latest, when the state trial judge granted his motion for a new trial on the basis of the medical records. That occurred in 2000, long before Gage filed his first habeas petition in 2005. Although Gage mentioned the possibility of a *Brady* claim and the medical records in passing in his first petition, he has never argued, either on appeal of the denial of that petition or in his application to file a second-or-successive petition, that he actually raised the *Brady* claim in that petition. Thus, Gage failed to show due diligence by failing to include the *Brady* claim in his original petition. *See Woratzeck*, 118 F.3d at 652 (concluding that a successive petitioner raising a claim for unconstitutional

destruction of exculpatory evidence did not exercise due diligence because "he [had] known about its (possible) destruction for several years"); *Johnson v. Dretke*, 442 F.3d 901, 910–11 (5th Cir. 2006) (noting that a default under § 2244(b)(2)(B)(i) may occur "where the record demonstrates that the defendant . . . was aware of the potential *Brady* material but failed to pursue investigation of that ultimate claim").**[6]**   Gage cannot make out a prima facie case of satisfying § 2244(b)(2).

## IV.

Last, Gage contends that notwithstanding his default under § 2244(b)(2), he should be allowed to file his second petition because his claim falls into the actual innocence exception articulated in *Schlup*.   Decided one year before AEDPA's enactment, *Schlup* identified a narrow exception allowing federal courts to consider the merits of certain procedurally defaulted habeas petitions asserting constitutional violations, if those petitions also include compelling showings of actual innocence. *Schlup*, 513 U.S. at 326–27.   We assume without deciding that Gage's *Brady* claim, paired with his assertion of actual innocence, would satisfy *Schlup*.   The question, then, is whether *Schlup* provides a gateway past the procedural requirements imposed by AEDPA, § 2244(b)(2)(B).

---

**[6]** Gage's ineffective assistance of counsel claims relate to his former counsel's performance before the trial court.   All of the alleged deficiencies should have been known to Gage, at the latest, when the state trial judge overturned his conviction based on Marian's medical records. Thus, Gage also did not exercise due diligence in failing to bring these claims in his first habeas petition.

Dualisms define habeas corpus. Habeas is a "vital instrument for the protection of individual liberty" against government power. *Boumediene v. Bush*, 553 U.S. 723, 743 (2008). But the reexamination of state convictions that the modern writ entails implicates values of finality and comity that are important to federalism and our system of criminal justice. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *McCleskey v. Zant*, 499 U.S. 467, 491 (1991); *Kuhlmann v. Wilson*, 477 U.S. 436, 453 n.16 (1986). Likewise, habeas corpus is "at its core, an equitable remedy," that is sensitive to the ends of justice. *Schlup*, 513 U.S. at 319. Yet Congress has placed limits on the substantive scope of habeas for over a century. *See Felker v. Turpin*, 518 U.S. 651, 659–60 (1996); *Kuhlmann*, 477 U.S. at 446; Note, *Powers of Congress and the Court Regarding the Availability and Scope of Review*, 114 Harv. L. Rev. 1551, 1551–53 (2001).

From these competing principles emerged the fundamental miscarriage of justice exception. The exception "seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Schlup*, 513 U.S. at 324. As a general matter, the exception allows federal courts to excuse procedural default in the "truly deserving" habeas petition where there is a showing of actual innocence. *Id.* at 321; *see Sawyer v. Whitley*, 505 U.S. 333, 336 (1992). Furthermore, under *Schlup*, where the petitioner's assertion of actual innocence is accompanied by an assertion of constitutional error at trial, the likelihood of innocence required to excuse procedural default is lower than if the trial had been error free. *Schlup*, 513 U.S. at 316. In these cases, procedural default may be excused if "it is more

likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence." *Id.* at 327.

When Congress enacted the AEDPA, it altered, and in many respects strengthened, the rules governing procedurally defaulted habeas petitions. *See Jones v. Ryan*, 733 F.3d 825, 841–42 (9th Cir. 2013). The question thus arose whether and in what circumstances the *Schlup* exception, which developed under the pre-AEDPA regime, remains viable and provides a gateway past the AEDPA's new procedural default rules. In a series of cases, the Supreme Court has held that the actual innocence exception survives the enactment of the AEDPA in certain instances and provides a gateway past *some* of the AEDPA's procedural restrictions. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1935–38 (2013) (holding that a *Schlup* actual innocence showing provides a gateway past the AEDPA statute of limitations); *House v. Bell*, 547 U.S. 518, 537–38 (2006) (indicating that the *Schlup* actual innocence exception permits a federal court to reach the merits of a petition that was procedurally defaulted in state court); *Calderon v. Thompson*, 523 U.S 538, 558 (1998) (indicating that a federal court may, consistent with the AEDPA, recall its mandate if there is a showing of a miscarriage of justice).

The Supreme Court has not explicitly determined whether the *Schlup* exception provides a gateway past § 2244(b)(2)'s successive petition restrictions. At least one of our sister circuits has indicated that *Schlup* does not bypass § 2244(b)(2). *See Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1359 (11th Cir. 2007). In *Cooper v. Woodford*, we considered the issue but declined to resolve it. 358 F.3d 1117, 1119 (9th Cir. 2004) (en banc); *see also Jones*, 733 F.3d at 841 n.5.

In answering this question, we recognize that although habeas remains an equitable writ, we generally are bound to observe the limits on its scope established by Congress. *See Felker v. Turpin*, 518 U.S. 651, 663–64 (1996) (rejecting a challenge to § 2244(b) under the Suspension Clause, U.S. Const., art. I, § 9, cl. 2, because "[t]he power to award the writ by any of the courts of the United States, must be given by written law" (quoting *Ex Parte Bollman*, 8 U.S. (4 Cranch) 75, 94 (1807))).

In each of the cases where the Supreme Court has held that the actual innocence exception may excuse procedural default, the procedural bar at issue did not itself provide guidance on when its strictures could be overcome. The default at issue in *House* occurred under a state statute that provided only "that claims not raised in prior postconviction proceedings are presumptively waived" and did not directly implicate any of the AEDPA's provisions. *House*, 547 U.S. at 534. Similarly, in *McQuiggin*, the default came under the AEDPA statute of limitations, which simply identifies a rule for when habeas petitions must be filed and does not lay out equitable exceptions to that rule. *See McQuiggin*, 133 S. Ct. at 1929.

Unlike those cases, the provision Gage seeks to bypass through the *Schlup* gateway explicitly identifies equitable exceptions to the procedural bar it sets out. Under § 2244(b)(2)(B), successive petitions *are* allowed, provided that actual innocence can be shown by clear and convincing evidence and the petitioner displayed due diligence. Thus, it appears that in enacting § 2244(b)(2)(B), Congress accounted for the equitable principles from which the actual innocence exception arose. Congress provided a safety valve for petitioners with compelling claims of actual innocence, but

cabined its scope by instituting the due diligence requirement. *See Felker*, 518 U.S. at 664 (explaining that § 2244(b)'s requirements are "well within the compass" of the evolving equitable principles that have traditionally informed when courts may entertain successive petitions).

Reading *Schlup* to bypass that scheme entirely proves too much. Under *Schlup*, a procedural default is excused if the facts underlying the petitioner's claim, more likely than not, would have resulted in any reasonable jury being unable to convict the petitioner. Section 2244(b)(2)(B)(ii) provides the same thing but raises the petitioner's burden of proof, requiring clear and convincing evidence of innocence instead of a preponderance of the evidence. *See Schlup*, 513 U.S. at 323–27. Were *Schlup* to provide a gateway past § 2244(b)(2)(B), the due diligence requirement in § 2244(b)(2)(B)(i) would lose all effect. The only cases in which petitioners would be subject to the due diligence bar would be those where they failed to establish actual innocence by a preponderance of the evidence. But because the preponderance is a less exacting standard than clear and convincing evidence, those petitioners invariably would be barred under § 2244(b)(2)(B)(ii). Under this reading, the due diligence requirement would be surplusage. Familiar principles of statutory interpretation direct that we give independent meaning to each provision in a statute. *See United States v. 144,774 Pounds of Blue King Crab*, 410 F.3d 1131, 1134–35 (9th Cir. 2005).

The Supreme Court's recent decision in *McQuiggin* confirms our conclusion. In that case, the petitioner did not file his habeas petition within one year of "the date on which the factual predicate of [his] claim . . . could have been discovered through the exercise of due diligence," as required

under § 2244(d)(1)(D).  *McQuiggin*, 133 S. Ct. at 1929 (quoting 28 U.S.C. § 2244(a)(1)(D)).  The Supreme Court ultimately held that a valid *Schlup* claim abrogated that requirement, but it did so by distinguishing § 2244(d)(1)(D) from § 2244(b)(2)(B), at issue here.  The Court explained that, in contrast to § 2244(d)(1)(D), in § 2244(b)(2)(B), "Congress constrained the application of the [actual innocence] exception. . . .  Congress . . . required second-or-successive habeas petitioners attempting to benefit from the miscarriage of justice exception to meet a higher level of proof ('clear and convincing evidence') and to satisfy a diligence requirement that did not exist prior to AEDPA's passage."  *Id.* at 1933 (quoting 28 U.S.C. § 2244(b)(2)(B)).  Accordingly, the Court concluded, "[i]n a case *not* governed by [§ 2244(b)(2)(B)] . . . the miscarriage of justice exception survived AEDPA's passage intact and unrestricted."  *Id.* at 1934 (emphasis added).  The negative implication is that in a case that *is* governed by § 2244(b)(2)(B), the exception did not survive enactment of the AEDPA intact.  We cannot ignore the Supreme Court's clear teaching.  We hold that *Schlup* does not abrogate § 2244(b)(2)(B).[7]

Accordingly, Gage cannot take advantage of the *Schlup* gateway; thus, his second petition is barred under § 2244(b)(2)(B)(i) for lack of due diligence.

---

[7] Our holding is confined to the context of gateway claims relying on *Schlup*.  We do not decide whether freestanding claims of actual innocence, *see Herrera v. Collins*, 506 U.S. 390, 417 (1993), may excuse procedural default under § 2244(b)(2)(B).  Nor do we address the effect of *Schlup* on AEDPA provisions other than § 2244(b)(2)(B).

**V.**

We conclude that Gage's application is subject to the requirements of § 2244(b)(2)(B).  Gage cannot satisfy those requirements because he did not exercise due diligence by failing to raise his *Brady* or ineffective assistance of counsel claims in his first habeas petition.  Gage's application for leave to file a second or successive petition is **DENIED.**