**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

**FILED**

JUN 1 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| MURRAY HOOPER,<br><br>        Applicant,<br><br>  v.<br><br>DAVID SHINN, Director, Arizona Department of Corrections, Rehabilitation and Reentry; et al.,<br><br>        Respondents. | No.   21-70995<br><br>District of Arizona, Phoenix<br><br>ORDER* |

Application to File Second or Successive
Petition Under 28 U.S.C. § 2254

Submitted May 28, 2021**

Before:  NGUYEN, BENNETT, and R. NELSON, Circuit Judges.

Murray Hooper, an Arizona state prisoner sentenced to death, has applied for

permission to file a second or successive petition for habeas corpus in the district

court.  Dkt. No. 1; *see* 28 U.S.C. § 2244(b)(3)(A).  We deny Hooper's application

---

        *        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

        **        The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

because he has failed to satisfy the stringent statutory standards governing successive habeas petitions.[1]  *See* 28 U.S.C. § 2244(b).

## I.

In 1982, an Arizona jury convicted Hooper on eleven felony counts, including two counts of first-degree murder.  *See Hooper v. Shinn*, 985 F.3d 594, 602 (9th Cir. 2021).  The court sentenced Hooper to death for the two first-degree murders.  *Id.* at 610.

Hooper filed his first federal habeas petition in 1998.  *Id.* at 613.  The district court denied the petition, and Hooper appealed.  *Id.* at 613–14.  We recently affirmed the district court's denial of habeas relief.  *Id.* at 600.

Hooper now moves under § 2244(b)(3)(A) for permission to file a second or successive petition that would include two purported *Brady* violations that were not included in his first petition.  *See Brady v. Maryland*, 373 U.S. 83 (1963).  The *Brady* claims are based on the alleged nondisclosure of (1) Detective Larry Martinsen's "verbatim notes," which documented Marilyn Redmond's identification of Hooper during a lineup conducted on February 22, 1981 ("Notes"), and (2) a police report dated September 1, 1981, which documented statements from an attorney named Michael Green ("Green Report").

---

[1] We grant Hooper's unopposed motion to file a reply to the State's response and order that the proposed reply attached to his motion be filed.  Dkt. No. 4.

Fairly construing Hooper's moving papers, including his proposed second or successive petition attached to his application, it appears that he also seeks permission to assert a claim that his Sixth Amendment right to confrontation was violated by the admission of a coconspirator's (Ed McCall) hearsay statements. He argues that the State presented no proof that McCall's statements fell within the coconspirator hearsay exception, and therefore his Sixth Amendment right to confrontation was violated.

Hooper raised these claims, among others, in his fifth state post-conviction petition, which the state court denied in February 2018. In denying the *Brady* claims, the state court rejected Hooper's contention that the Green Report would have rendered inadmissible McCall's hearsay statements, as the state court determined that the hearsay had been properly admitted based on the evidence presented at trial. The Arizona Supreme Court denied the subsequent petition for review in 2020.

## II.

We may authorize the filing of a second or successive petition only when the applicant has made a "prima facie showing," 28 U.S.C. § 2244(b)(3)(C), that

> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable

3

factfinder would have found the applicant guilty of the underlying offense.

*Id.* § 2244(b)(2)(B)(i)–(ii).

A "prima facie showing" is "a sufficient showing of possible merit to warrant a fuller exploration by the district court." *Woratzeck v. Stewart*, 118 F.3d 648, 650 (9th Cir. 1997) (per curiam) (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)).  Put differently, we will grant the application "[i]f in light of the documents submitted with the application it appears reasonably likely that the application satisfies the stringent [statutory] requirements for the filing of a second or successive petition." *Id.* (quoting *Bennett*, 119 F.3d at 469).

## III.

## A.

To the extent Hooper's application seeks to assert a Sixth Amendment claim based on the admission of McCall's hearsay statements, he makes no argument that he can satisfy either the due diligence or actual innocence requirements under § 2244(b)(2)(B) for this claim.  Moreover, Hooper's Sixth Amendment claim is barred because he raised it in his first federal habeas petition, the district court denied relief, and Hooper did not appeal the denial.[2]  *See Tyler v. Cain*, 533 U.S.

---

[2] *See* Mem. of Points and Authorities in Supp. of Suppl. Pet. for Writ of Habeas Corpus at 98, *Hooper v. Schriro*, No. 2:98-CV-02164-SMM (D. Ariz. June 11, 1999), ECF No. 31 ("Inadmissible hearsay statements were admitted at trial based on a purported co-conspirator hearsay exception. . . . Ms. Louie testified at

4

656, 661 (2001) ("If the prisoner asserts a claim that he has already presented in a previous federal habeas petition, the claim must be dismissed in all cases." (citing 28 U.S.C. § 2244(b)(1)).

**B.**

We now turn to Hooper's *Brady* claims. The factual predicates for these claims are the State's purported nondisclosure of the Notes and Green Report. To satisfy § 2244(b)(2)(B)(i)'s due diligence requirement, Hooper must make "a prima facie showing that he exercised due diligence in uncovering" these facts before he filed his first federal habeas petition. *Woratzeck*, 118 F.3d at 652; *see also Brown v. Muniz*, 889 F.3d 661, 668 (9th Cir. 2018) ("[An applicant] must . . . show that the factual predicate for his habeas claim reasonably could not have been discovered at the time of his initial habeas petition.").

As Hooper points out in his application, Detective Martinsen testified about the Notes during Hooper's trial in November 1982. Because Hooper has known about the Notes since at least November 1982, the factual predicate supporting his *Brady* claim was also known to him sixteen years later when he filed his first

[Hooper's] trial as to what McCall told her. The admission of this testimony denied [Hooper] his right to confrontation and denied him due process of law."); Mem. of Decision and Order at 77, *Hooper v. Schriro*, No. 2:98-CV-02164-SMM (D. Ariz. Oct. 10, 2008), ECF No. 125; Petitioner-Appellant's Replacement Opening Br. at 3, *Hooper v. Shinn*, No. 08-99024 (9th Cir. Jan. 18, 2019), ECF No. 99.

federal habeas petition. Hooper therefore cannot satisfy the due diligence requirement for his *Brady* claim based on the Notes. *See Gage v. Chappell*, 793 F.3d 1159, 1166 (9th Cir. 2015) ("Under § 2244(b)(2)(B)(i), a petitioner fails to show due diligence regarding a claim by omitting that claim from his initial habeas petition, *provided the claim's factual predicate was known . . . at the time*." (emphasis added)).

As to his *Brady* claim based on the Green Report, Hooper explains that all the copies of his Illinois[3] and Arizona trial transcripts and records that he needed to discover the Green Report had been lost or damaged during prison shakedowns (at unspecified times) and, after he had asked the Arizona Federal Public Defender's Office for help in 2010 in obtaining new copies, it took several years for him to obtain complete copies.[4] This vague statement implies that Hooper discovered the Green Report sometime after 2010 when he was able to obtain complete copies of his trial transcripts and documents. But Hooper fails to explain precisely how and

---

[3] Hooper had been "convicted on September 23, 1981, in Illinois, on three counts of first-degree murder, three counts of armed robbery, and three counts of aggravated kidnapping . . . ." *Hooper*, 985 F.3d at 609. His convictions were vacated in 2013 by the United States District Court for the Northern District of Illinois upon grant of his petition for writ of habeas corpus. *Id.* at 613 n.9.

[4] Hooper also claims that "[i]t was not until the Federal Public Defender's Office began representing Hooper on his Illinois case that he discovered the claims." But when Hooper first discovered his claims is irrelevant because the due diligence inquiry focuses on when the "*factual predicate* for the claim" could have been discovered. 28 U.S.C. § 2244(b)(2)(B)(i) (emphasis added).

when he learned about the Green Report. Without this information we cannot determine whether Hooper could have discovered the Green Report sooner through due diligence. Thus, he has also failed to make a prima facie showing that he could satisfy the due diligence requirement for his *Brady* claim based on the Green Report.

Hooper has also failed to make a prima facie showing that he could satisfy the second requirement under § 2244(b)(2)(B)(ii)—"that the [*Brady*] material—if proven on habeas review—establishes by 'clear and convincing evidence that' [he] is actually innocent." *Brown*, 889 F.3d at 674 (quoting 28 U.S.C. § 2244(b)(2)(B)(ii)).

Hooper has not provided a copy of the Notes, as they apparently were destroyed at some unknown time. But he suggests that the Notes would show that Marilyn viewed Hooper's lineup twice and picked Hooper during the second viewing. According to Hooper, this evidence would have undermined Marilyn's and Detective Martinsen's testimony that Marilyn picked Hooper during the one and only lineup. Even assuming the Notes say what Hooper contends (which is not at all clear), the Notes would merely show that Marilyn did not identify Hooper at first but that she ultimately did identify him as the murderer. This falls well short of showing that Hooper was actually innocent, especially given Marilyn's

7

unwavering in-court identification of Hooper and the other overwhelming evidence implicating Hooper as the murderer. *See Hooper*, 985 F.3d at 603–06.

The Green Report documented that, in early January or February 1981, Robert Cruz wired $1,000 to Green and told Green that "a guy" would pick up the money from Green at his office in Chicago. Green stated that a black male had picked up the money but that he could not give a description and would be unable to identify the individual from a photograph. According to Hooper, the trial court admitted McCall's hearsay statements implicating Hooper in the murders because the State had represented that it planned to call Green as a witness and that Green would testify that Hooper was the individual who had picked up the money. Green never testified. But Hooper argues that, had he known about the Green Report, he would have used it to successfully challenge the admission of McCall's hearsay statements. And according to Hooper, he would have been found innocent without that hearsay evidence.

Hooper's argument is unavailing. First, it does not address the relevant inquiry: whether "the facts underlying the claim, if proven and viewed in light of the evidence as a whole," would establish that Hooper is actually innocent. 28 U.S.C. § 2244(b)(2)(B)(ii); *see also Brown*, 889 F.3d at 675. The facts underlying Hooper's *Brady* claim based on the Green Report are that the State suppressed a police report, which showed Green could not have identified Hooper as the person

8

who picked up the money sent by Cruz. Those facts, even if true, do not establish that Hooper is actually innocent because they in no way undermine the key trial evidence implicating Hooper as the murderer. *See Hooper*, 985 F.3d at 603–06.

Second, Hooper's argument hinges on the premise that the Green Report would have caused the trial court to exclude McCall's hearsay statements. But as the state post-conviction court found in denying Hooper's fifth petition, the Green Report would have had no impact on the admissibility of McCall's hearsay statements because the trial court properly admitted the hearsay based on the evidence that was actually introduced at trial. Hooper's challenge to that determination depends entirely on his Sixth Amendment claim. That is, he argues that the state post-conviction court's determination was wrong because the admission of McCall's hearsay statements violated his Sixth Amendment right to confrontation. But as discussed above, his Sixth Amendment claim is barred. Hooper therefore fails to show that the state post-conviction court erred in determining that the Green Report would have had no impact on the admissibility of McCall's hearsay statements. In short, Hooper has not made a prima facie showing that the Green Report establishes he is actually innocent.

## IV.

Hooper has failed to make a prima facie showing that he could satisfy the requirements under § 2244(b)(2) to file a second or successive habeas corpus

9

petition. He has not shown that the factual predicates underlying his *Brady* claims could not have been discovered through due diligence, nor has he shown that the facts underlying his *Brady* claims establish by clear and convincing evidence that he is actually innocent. As to his Sixth Amendment claim, it is barred because he raised it in his first federal habeas petition. Hooper's application to file a second or successive petition is **DENIED**.