NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 22 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SHON YOKELY,<br><br>                Applicant,<br><br>  v.<br><br>CHRISTIAN PFEIFFER, Warden,<br><br>                Respondent. | No. 20-73660<br><br>MEMORANDUM[*] |

Application to File Second or Successive
Petition Under 28 U.S.C. § 2254

Submitted November 18, 2021[**]
Pasadena, California

Before: LINN,[***] BYBEE, and BENNETT, Circuit Judges.

Shon Yokely is serving four consecutive life terms for murdering a fourteen-

month-old baby girl and attempting to murder her mother and two uncles. *See*

*People v. Yokely*, 108 Cal. Rptr. 3d 318, 323–25 (Ct. App. 2010). Because the

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Richard Linn, United States Circuit Judge for the U.S. Court of Appeals for the Federal Circuit, sitting by designation.

parties are familiar with the facts, we do not recount them here, except as necessary to provide context to our ruling.

Yokely was originally convicted in 1992 but secured federal habeas relief in 2007 because his lawyer had not been present at a live lineup and had failed to object at trial to the introduction of the lineup identifications. Yokely was convicted again in 2008. He then filed an unsuccessful federal habeas petition, and now applies for leave to file a second or successive petition. We deny the application.

Federal law "greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications." *Tyler v. Cain*, 533 U.S. 656, 661 (2001). Before filing a second or successive habeas petition in district court, an applicant must obtain permission from the court of appeals. *See* 28 U.S.C. § 2244(b)(3)(A). At the outset, "[a] claim presented in a second or successive habeas corpus application under [28 U.S.C. §] 2254 that was presented in a prior application shall be dismissed." *Id.* § 2244(b)(1). And "[a] claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless" it meets one of two requirements. *Id.* § 2244(b)(2). Yokely argues that he meets the

2

second requirement.[1]

An applicant must show both that "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence" and that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Id.* § 2244(b)(2)(B).

"The due diligence inquiry . . . turns on two factors: (1) whether the petitioner was on inquiry notice to investigate further, and, if so, (2) whether the petitioner took reasonable steps to conduct such an investigation." *Solorio v. Muniz*, 896 F.3d 914, 921 (9th Cir. 2018). "A petitioner must exercise due diligence in investigating new facts where he is on notice that new evidence *might* exist. He cannot escape the due diligence requirement simply by showing he did not know of the new evidence earlier." *Id.* at 920. This requirement applies to the "factual predicate[s]" of claims, meaning that it bars claims based on facts that were "known or reasonably discoverable at the time." *Gage v. Chappell*, 793 F.3d 1159, 1166 (9th Cir. 2015).

---

[1] Yokely does not argue that he meets the first requirement, "that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A).

Yokely seeks to assert five claims,[2] through which he alleges ineffective assistance of counsel and due process violations. But he could have discovered the factual predicates of his first four claims and presented them in his first-in-time federal habeas petition. And the facts underlying his fifth claim, viewed in light of the evidence as a whole, do not establish that no reasonable factfinder would have found Yokely guilty.

First, Yokely argues that his trial counsel rendered ineffective assistance by failing to conduct adequate pretrial investigation and preparation. But Yokely knew about his attorney's lack of preparation when he decided to discharge him in favor of self-representation. At a pretrial suppression hearing, Yokely requested to serve as co-counsel with his attorney, arguing that he knew his case and the law well, and that he could "better present [the issues] and assist [his] counsel because he ha[d] been sick," "had a heart attack[,] and other things." Although the trial court denied his request, Yokely notified the court after jury selection that he was relieving his attorney and would represent himself. Yokely disagreed with aspects of his attorney's trial strategy and implied that the latter's decision-making was

---

[2] Although Yokely's application lists four claims, we treat his fourth claim as two separate claims. Yokely alleges ineffective assistance of counsel in his attorney's failure to investigate the impossibility of an eyewitness's identification of Yokely as the shooter. And Yokely also alleges a due process violation based on the development of new technology enabling the production of exculpatory evidence that casts the eyewitness identification in a different light.

4

suspect because of his recent illness. He thus knew of the factual predicate for his claim at the time of his trial—and, as follows, when he filed his first-in-time habeas petition.

Second, Yokely argues that his due process rights were violated because the trial court failed to determine whether an imposter purporting to be the decedent's mother testified at trial. But Yokely admits that he knew about the factual predicate for this claim at trial—when he first raised the imposter issue. And he decided not to pursue the imposter issue both on direct appeal and in his first-in-time federal habeas petition because the trial court rejected his argument.

Third, Yokely argues that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny by failing to disclose that a key witness had a pending criminal prosecution and by failing to correct the witness's testimony to the contrary. But Yokely could have discovered the public record of the pending criminal charge at the time of trial and when he filed his first-in-time habeas petition had he exercised due diligence.[3]

---

[3] We note that Yokely acknowledges that the witness truthfully answered whether he had a state *conviction* by stating that he had "no state conviction except the misdemeanor charge"—referring to a different conviction. The prosecution did not ask the witness about any pending charges, and the witness did not falsely deny his pending charge. *See California v. Trombetta*, 467 U.S. 479, 485 (1984) ("The most rudimentary of the access-to-evidence cases impose upon the prosecution a constitutional obligation to report to the defendant and to the trial court whenever government witnesses lie under oath." (citing *Napue v. Illinois*, 360 U.S. 264, 269–72 (1959)).

Fourth, Yokely argues that his trial counsel was ineffective because he failed to investigate and challenge an eyewitness's identification, including using crime-scene reenactment technology. But, as noted, Yokely knew about his attorney's lack of preparation in the leadup to trial, so he could have asserted this claim in his first-in-time petition.

Fifth, Yokely argues that he was denied due process because new technology and techniques for crime-scene reconstruction, unavailable at the time of his first habeas petition, cast the eyewitness's identification in a different light. But the expert report based on the reconstruction recognized that the eyewitness could have discerned the general shape of the shooter's head and hairstyle, as well as the general color of his skin. And the jury might have rejected the expert's conclusions because they were based a disputed fact: that the eyewitness saw the shooter from eighty-three feet, even though the eyewitness testified that the distance was around twenty-five feet. Most importantly, a second eyewitness identified Yokely as the shooter. Even the complete excision of the identification would not be "enough to show by clear and convincing evidence that 'no reasonable factfinder' would have found [Yokely] guilty." *Gimenez v. Ochoa*, 821 F.3d 1136, 1145 (9th Cir. 2016) (citations omitted).

Yokely's application to file a second or successive habeas petition

is **DENIED**.