In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-1254

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KHALED OBEID,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 038-2—**Blanche M. Manning**, *Judge.*

ARGUED SEPTEMBER 26, 2012—DECIDED FEBRUARY 22, 2013

Before EASTERBROOK, *Chief Judge,* and WOOD and
WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* In exchange for his cooperation
with the government, Khaled Obeid is serving a federal
sentence that is at least 45% shorter than it would have
been had he been sentenced within the range recom-
mended by the United States Sentencing Guidelines.
He believes, however, that he is entitled to an addi-
tional 24-month reduction, based not on his own coopera-

tion, but on that of his identical twin brother, Khaldon Esawi. The district court concluded that Obeid was not so entitled, and we agree, though for a different reason. The proper procedural vehicle for Obeid's claim is not, as Obeid, the government, and the district court all apparently assumed, a motion to compel under Federal Rule of Criminal Procedure 35(b). It is instead a motion under 28 U.S.C. § 2255. Although we find that relief for Obeid is not barred for lack of permission to file a successive motion, it is unavailable for another reason: his motion was filed beyond the time permitted by Section 2255(f) and thus was properly dismissed.

**I**

Over 10 years ago, Obeid and his twin brother Esawi were indicted along with more than 10 others for their involvement in a conspiracy to smuggle pseudoephedrine tablets from Canada into the United States; the pills were ultimately destined to be used in Mexico for methamphetamine production. In all, Obeid and Esawi smuggled over 215 million pseudoephedrine tablets into this country between 2001 and their indictment in 2002. The brothers were also involved in money laundering related to their smuggling scheme.

In 2004 Obeid and Esawi each pleaded guilty to drug possession and money laundering. Their substantially identical plea agreements contemplated that sentencing would be deferred while the brothers assisted the government with its ongoing investigation. In exchange for that assistance, the government promised to seek

a downward departure for each brother under Section 5K1.1 of the guidelines.

Obeid and Esawi were both sentenced in 2006. At Obeid's sentencing hearing, the government, as promised, moved for a below-guidelines sentence. The Assistant U.S. Attorney noted that much of the cooperation the government was attributing to Obeid actually had been provided by Esawi. The AUSA explained that because the brothers possessed more or less the same information, it was often unnecessary to solicit assistance from both of them, but that the government was nonetheless willing to credit each with the other's cooperative efforts. The district court granted the government's motion and sentenced Obeid to 178 months in prison, which represented a 45% discount from the low end of the guidelines range.

In January 2006, several months before Obeid's sentencing, the government entered into a supplemental plea agreement with Esawi in which it agreed to seek a further reduction in Esawi's sentence pursuant to Rule 35(b) in exchange for his continuing cooperation. As a result, in 2008 Esawi received an additional 24-month sentence reduction. Obeid knew of this supplemental agreement by the time of his sentencing, but since it related to future cooperation he had no way of knowing whether the government would eventually make the anticipated motion or how much of a reduction it would seek. Obeid also knew that he had not entered into a comparable agreement. Although the government signaled at the sentencing hearing that it would

be open to negotiating a supplemental agreement
with Obeid if he were willing to provide additional
assistance, Obeid never attempted to negotiate such an
agreement or to provide further cooperation. Rather, he
spent the next several years attempting to undo his sen-
tence. We dismissed his initial appeal of his sentence
in 2007 on the ground that it violated the appellate
waiver in his plea agreement. *United States v. Obeid*, 256
F. App'x 816 (7th Cir. 2007). Obeid later moved for
relief under 28 U.S.C. § 2255, alleging ineffective
assistance of counsel. We denied Obeid's request for a
certificate of appealability from the district court's deci-
sion denying relief. *Obeid v. United States*, No. 08-2361
(7th Cir. Dec. 12, 2008).

On July 15, 2010, Obeid returned to the district court
with a filing that he styled a "motion to compel the gov-
ernment to seek an additional reduction under
[Rule 35(b)]." In the motion, Obeid alleged that the gov-
ernment had promised to treat him and Esawi identically
for purposes of crediting their cooperation, and that
the government was violating that promise by refusing
to seek the same Rule 35(b) reduction for Obeid that it
had for Esawi back in 2008. The district court held an
evidentiary hearing, after which it found that neither
Obeid's plea agreement nor statements made at his sen-
tencing hearing established that the government had
ever promised to continue to credit Obeid with his
brother's cooperation after sentencing. The district
court further concluded that the government's explana-
tions for why it chose to seek future cooperation from
Esawi only—namely, that Esawi had a better memory

and that dealing with Obeid was "almost impossible"—were rationally related to its legitimate interest in obtaining cooperation. Accordingly, the district court denied the motion. This appeal followed.

## II

### A

Obeid, the government, and the district court all treated Obeid's motion as one properly filed under Federal Rule of Criminal Procedure 35(b). This was incorrect. Rule 35(b) provides a mechanism for the *government* to seek a reduction in a defendant's sentence based on his substantial cooperation; it nowhere allows a defendant to force the government to seek a Rule 35(b) reduction on his behalf. Nevertheless, if the government refuses to follow through on a promise to file a Rule 35(b) motion, and that refusal is "based on an unconstitutional motive" or is "not rationally related to any legitimate Government end," *Wade v. United States*, 504 U.S. 181, 185-86 (1992), the defendant is not without opportunity for redress. Rather, as we explained in *United States v. Richardson*, 558 F.3d 680 (7th Cir. 2009), the defendant may challenge the government's refusal in a motion under 28 U.S.C. § 2255. *Id.* at 681-82. We will therefore treat Obeid's filing as such a motion.

Because Obeid already has one Section 2255 motion to his name, his new filing must clear the jurisdictional hurdle imposed by the Antiterrorism and Effective

Death Penalty Act (AEDPA). That statute provides that a district court may not entertain a "second or successive" motion filed by a federal prisoner unless the prisoner has first obtained authorization to file from the court of appeals. §§ 2244(a); 2255(h); see also *Nuñez v. United States*, 96 F.3d 990, 991 (7th Cir. 1996). Obeid did not ask this court for its permission to file his motion, and so if it qualifies as "successive," the district court lacked jurisdiction to adjudicate it. *Nuñez*, 96 F.3d at 991. We add that to the extent Obeid is now asking for our permission to file a successive motion, see, *e.g.*, *United States v. Lloyd*, 398 F.3d 978, 981 (7th Cir. 2005), the answer must be no. The arguments he presented in his "Rule 35(b)" motion fall under neither of AEDPA's exceptions to the prohibition on successive motions. See § 2255(h) (permitting successive motions only when they raise claims based on either newly discovered evidence that establishes the petitioner's innocence, or "a new rule of constitutional law[] made retroactive to cases on collateral review by the Supreme Court").

Obeid can proceed with this case, therefore, only if, under the complex rules that have evolved since AEDPA's passage, his motion cannot be characterized as truly successive. In the context of discussing petitions filed under 28 U.S.C. § 2254, which applies to persons in state custody, the Supreme Court has held repeatedly that not every petition "filed second or successively in time" to a prior petition counts as "second or successive," "even when the later filings address a [] judgment already challenged in a prior § 2254 application."

*Panetti v. Quarterman*, 551 U.S. 930, 944 (2007); see also *Magwood v. Patterson*, 130 S. Ct. 2788, 2796 (2011) ("[I]t is well settled that the phrase does not simply refe[r] to all § 2254 applications filed second or successively in time.") (alterations in original) (internal quotation marks omitted). On this point, there is no material difference between motions under Section 2255 and petitions under Section 2254, and so we have no hesitation in applying those holdings to Obeid's case.

The Court's decision in *Panetti* sheds light on when a petition or motion that is numerically second should also be subject to the special rules for successive filings. There, a death row inmate who previously had filed a federal habeas corpus petition raising various issues about his trial and sentence sought to bring a second petition in which he asserted that he was mentally incompetent and thus could not be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986). 551 U.S. at 937-38. Although the state conceded that *Ford* claims are generally unripe until well after AEDPA's standard one-year limitation period for filing an initial petition has run (because the prisoner cannot raise a *Ford* claim until his execution is imminent), it argued that Panetti's second petition was nevertheless "second or successive" to his first and thus barred by Section 2244(b). *Id.* at 942-43. The Court rejected this reading of the law, holding instead that a petition raising a previously unripe *Ford* claim is not second or successive to a prior petition and thus does not fall within the purview of Section 2244(b). *Id.* at 947. In so holding, the Court noted that the phrase "second or successive" "takes its full meaning

from [the Court's] case law, including decisions predating the enactment of [AEDPA]." *Id.* at 943-44.

The Court's conclusion in *Panetti* hinged on the fact that the *Ford* claim was not yet available when Panetti brought his first federal petition. *Id.* at 943-47. A number of our sister circuits have generalized this logic to apply to other types of second-in-time petitions that were not ripe at the time of the initial petition. See, *e.g.*, *United States v. Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011) ("Prisoners may file second-in-time petitions based on events that do not occur until a first petition is concluded. . . . [S]uch claims were not ripe for adjudication at the conclusion of the prisoner's first federal habeas proceeding." (citing cases)); *Johnson v. Wynder*, 408 F. App'x 616, 619 (3d Cir. 2010) ("We see no reason to avoid applying *Panetti* in the context of other types of claims that ripen only after an initial federal *habeas* petition has been filed."); *In re Jones*, 652 F.3d 603, 605 (6th Cir. 2010) (petition raising *ex post facto* claim based on amendments to state law that occurred after first petition was not second or successive); *Leal Garcia v. Quarterman*, 573 F.3d 214, 222-24 (5th Cir. 2009) ("If, however, the purported defect did not arise, or the claim did not ripen, until after the conclusion of the previous petition, the later petition based on that defect may be non-successive."); *Thompkins v. Secretary, Dep't of Corr.*, 557 F.3d 1257, 1260-61 (11th Cir. 2009) (claim that delay in executing petitioner violated the Eighth Amendment was not second or successive because the delay could not give rise to a constitutional claim until it had occurred). (We note that there is some varia-

tion in these decisions about the critical time. Some imply that in order to escape the successive petitions bar, a claim must be unripe only at the time the first petition is *filed*, see *Johnson*, 408 F. App'x at 619; *Jones*, 652 F.3d at 605 (same), while others indicate that the claim must still be unripe when the first petition is *adjudicated*, see *Buenrostro*, 638 F.3d at 725; *Leal Garcia*, 573 F.3d at 222. Although this distinction could be dispositive in certain cases, it makes no difference to the outcome here, and neither party commented on it. Accordingly, we leave resolution of this question for another day.)

In adopting this ripeness rule, courts have been careful to distinguish genuinely unripe claims (where the factual predicate that gives rise to the claim has not yet occurred) from those in which the petitioner merely has some excuse for failing to raise the claim in his initial petition (such as when newly discovered evidence supports a claim that the petitioner received ineffective assistance of counsel); only the former class of petitions escapes classification as "second or successive." See *Buenrostro*, 638 F.3d at 726; *Thompkins*, 557 F.3d at 1260. Our pre-*Panetti* decision in *In re Page*, 170 F.3d 659 (7th Cir. 1999), offers an example of a claim that fits within this latter category and thus was properly rejected as successive. The petitioner in *Page* was trying in both petitions to attack the state's original failure to hold a fitness hearing; he was not entitled, we held, to a second opportunity to raise that point, even though state law had changed in the interim. 170 F.3d at 660-61.

The idea that a motion or petition that is literally "second" might not be subject to the rules of Sections 2244

and 2255(h) is not new to this court. In the past, we have acknowledged that certain petitions, such as those dismissed for failure to pay a filing fee or to exhaust state-court remedies, do not trigger AEDPA's successive-petition bar. See, *e.g.*, *Altman v. Benik*, 337 F.3d 764, 766 (7th Cir. 2003). We have not yet applied a ripeness rule for determining whether a petition is second or successive. *Cf. Suggs v. United States*, ___ F.3d ___, 2013 WL 173969, *2 (7th Cir. Jan. 17, 2013) (summarizing *Panetti*); *Purvis v. United States*, 662 F.3d 939, 944 (7th Cir. 2011) (considering whether to apply ripeness principles from *Panetti*, but concluding that the case was more appropriately resolved by the procedures outlined in *Rhines v. Weber*, 544 U.S. 269 (2005)). Seeing no reason to part ways with our sister circuits, however, we join them in concluding that a petition or motion based on a claim that did not become ripe any earlier than until after the adjudication of the petitioner's first petition or motion is not "second or successive" within the meaning of Sections 2244 and 2255(h). (We reiterate that we express no view concerning claims that become ripe in between the filing and adjudication of a first petition.)

Applying this principle to Obeid, it appears that his Rule 35(b) claim became ripe no earlier than June 9, 2008, when the government moved for a Rule 35(b) reduction on behalf of Esawi alone. Obeid has persistently maintained that the government promised to treat him and Esawi equally, crediting all cooperation provided by one to the other and vice versa. The factual predicate for Obeid's claim was thus not in place until the government violated this (supposed) promise by seeking an

additional sentence reduction only for Esawi. Obeid's initial Section 2255 motion was filed on February 19, 2008, and denied on February 29, 2008, several months before the June date. Accordingly, his current petition was not second or successive, and the district court had jurisdiction to decide it.


B

While important, jurisdiction is far from the only procedural prerequisite that Obeid must satisfy. We need consider only one more: the rules establishing when a motion under Section 2255 must be filed. Section 2255(f) imposes a one-year limitation period that runs from, as relevant here, "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Here, counsel for Obeid has represented that "it was reasonable for Obeid to remain unaware of the impact of the supplemental plea agreement [with Esawi] *until June and* [sic] *October of 2008*, when the Government filed its plea [on Esawi's behalf]." (Emphasis added.) We take this as an acknowledgment that Obeid realized, or should have realized, that the government had broken its supposed promise no later than the end of 2008. Obeid's motion, filed on July 15, 2010, came along at least a year and a half later and was thus too late.

Finally, we note that our preliminary review of the merits strongly suggests that Obeid's motion was doomed in any event. Obeid cannot claim that the government violated the promises it made in the plea agree-

ment, for the simple reason that nothing in that document addressed post-sentencing cooperation. The plain language of the agreement controls so long as its terms are unambiguous. See *United States v. Monroe*, 580 F.3d 552, 556 (7th Cir. 2009). Obeid's plea agreement provided that the government would move for a downward departure from the guidelines under Section 5K1.1, and the government did just that. The agreement included no additional promises. Nor does Obeid present any compelling evidence that the government ever promised that Obeid would receive additional credit for his brother's future cooperation. Rather, the evidence shows that Obeid received exactly what he bargained for: a 45% reduction off the low end of the sentencing guidelines range. He was entitled to no more.

The judgment of the district court is AFFIRMED.