**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

GREGORY L. BROWN,

*Petitioner-Appellant*,

v.

M. ATCHLEY, Warden,

*Respondent-Appellee*.

Nos. 20-16290
21-15922

D.C. Nos.
4:20-cv-03405-YGR
4:21-cv-02649-YGR

OPINION

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted March 30, 2023
San Francisco, California

Filed August 3, 2023

Before:  M. Margaret McKeown, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta;
Concurrence by Judge Ikuta

## SUMMARY[*]

### Habeas Corpus

In consolidated appeals, the panel reversed the district court's judgments dismissing, as second or successive under 28 U.S.C. § 2244(b), Gregory Brown's third and fourth federal habeas corpus petitions, and remanded.

Brown was convicted in California state court of one count of conspiracy to commit murder and one count of attempted murder on an aiding and abetting theory, and sentenced to 56 years to life. His conviction and sentence were affirmed on appeal. The district court denied his first federal habeas petition on the merits and declined to grant a certificate of appealability (COA); this court also declined to grant a COA. The district court dismissed as second or successive Brown's second federal habeas petition, and this court affirmed the dismissal.

After the district court dismissed Brown's second habeas petition, the California legislature amended the law relating to accomplice liability for murder, and added section 1170.95 to the California Penal Code, which provides a procedure for a defendant convicted of felony murder or murder under a "natural and probable consequences" theory to obtain retroactive relief. Shortly thereafter, Brown filed an application for resentencing in state court pursuant to section 1170.95, which the state denied.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Brown's third federal habeas petition argued that he was entitled to resentencing under section 1170.95, and that his continued incarceration under the original sentence violated his due process rights. His fourth federal habeas petition alleged, among other things, that he was denied effective assistance of counsel in applying to the state court for resentencing pursuant to section 1170.95 and that the state court's denial of his application violated his equal protection rights.

The panel held that Brown's due process, ineffective assistance of counsel, and equal protection claims did not become ripe until his application for resentencing was denied, which occurred well after the district court denied his first and dismissed his second habeas petitions. Because Brown could not have raised these claims in his first or second petition, his failure to do so is not an abuse of the writ. Applying *Panetti v. Quarterman*, 551 U.S. 930 (2007), the panel concluded that the third and fourth habeas petitions were, accordingly, not second or successive under § 2244(b).

The panel did not reach the parties' argument that, under *Magwood v. Patterson*, 561 U.S. 320 (2010), the state court's denial of Brown's application for resentencing under section 1170.95 constituted a new judgment for purposes of § 2254.

Concurring, Judge Ikuta wrote that the panel does the parties a disservice by declining to address their primary argument in this case. She would hold that the state court's denial of Brown's application for resentencing under section 1170.95 did not constitute a new judgment for purposes of § 2254.

## COUNSEL

Yevgeniy M. Parkman (argued), Assistant Federal Public Defender; Jodi Linker, Federal Public Defender; Federal Public Defender's Office; San Francisco, California; for Petitioner-Appellant.

Gregory A. Ott (argued), Deputy Attorney General; Peggy S. Ruffra, Supervising Deputy Attorney General; Jeffrey M. Laurence, Senior Assistant Attorney General; Rob Bonta, Attorney General of California; Office of the California Attorney General; San Francisco, California; for Respondent-Appellee.

## OPINION

IKUTA, Circuit Judge:

Gregory Brown, a prisoner serving a sentence of 56 years to life, brought two federal habeas petitions challenging the state court's denial of his application for resentencing under section 1170.95 of the California Penal Code.[1] The district court dismissed his petitions as second or successive under 28 U.S.C. § 2244(b). Under the circumstances of this case, Brown's petitions raise claims that "were not ripe for adjudication" when he brought his prior habeas petitions, and so should not be dismissed as second or successive.

---

[1] Section 1170.95 was renumbered as section 1172.6, effective June 30, 2022. *See* Stats. 2022, ch. 58, § 10. Because the events of this case took place before June 30, 2022, we refer to section 1170.95.

*United States v. Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011) (per curiam).  Therefore, we reverse and remand.

## I

### A

We begin with the applicable legal framework.  A federal court "shall entertain an application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Because Brown filed his federal habeas petitions after 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this case.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  Under AEDPA, courts are limited in their ability to consider claims brought in successive habeas petitions.  *See* 28 U.S.C. § 2244(b).[2]  "A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless" a statutory exception applies.[3]  *Id.*

---

[2] Consistent with the Supreme Court's practice, "[a]lthough 28 U.S.C. § 2244(b) refers to a habeas 'application,' we use the word 'petition' interchangeably with the word 'application.'" *Magwood v. Patterson*, 561 U.S. 320, 324 n.1 (2010).

[3] These statutory exceptions are:

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

§ 2244(b)(2). In addition, § 2244(b)(3)(A) provides that "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." *Id.*

"Although Congress did not define the phrase 'second or successive,' as used to modify 'habeas corpus application under section 2254,' §§ 2244(b)(1)–(2), it is well settled that the phrase does not simply 'refe[r] to all § 2254 applications filed second or successively in time.'" *Magwood*, 561 U.S. at 331–32 (quoting *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007) (alteration in original)). Rather, "[t]he phrase 'second or successive petition' is a term of art," *Slack v. McDaniel*, 529 U.S. 473, 486 (2000), that follows from the history of the writ.

Historically, "[a]t common law, res judicata did not attach to a court's denial of habeas relief," and courts allowed "endless successive petitions" after a court's initial denial of habeas relief. *McCleskey v. Zant*, 499 U.S. 467, 479 (1991). In 1924, after courts began allowing appellate review of denied habeas claims, the Supreme Court clarified that courts had discretion to dismiss a petition based on a prior denial of the same claim in an earlier petition. *See id.* at 480–82 (discussing *Salinger v. Loisel*, 265 U.S. 223 (1924) and *Wong Doo v. United States*, 265 U.S. 239 (1924)). Courts continued to expand upon the rule that

---

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).

repetitive petitions could constitute an abuse of the writ and a ground for dismissal through judicial decision-making. *See generally McCleskey*, 499 U.S. at 479–89 (detailing the origins and development of the common law abuse of the writ doctrine). Accordingly, the Supreme Court has held that, under certain circumstances, the failure to bring a claim in a prior petition (if the claim had been available at the time) constituted an abuse of the writ. *See, e.g., Delo v. Stokes*, 495 U.S. 320, 321–22 (1990) (per curiam) (holding that the petitioner's fourth habeas petition was an abuse of the writ where two claims "could have been raised in his first petition for federal habeas corpus" and that "[t]he equal protection principles asserted by [petitioner] are not novel and could have been developed long before this last minute application for stay of execution."); *see also Wong Doo*, 265 U.S. at 241 (concluding that the petitioner's second habeas petition was an abuse of the writ where the petitioner had a "full opportunity to offer proof" of the same claim in his first habeas application).

AEDPA incorporated some of these judge-made principles, *Slack*, 529 U.S. at 483, for dismissing petitions that were claimed to be an abuse of the writ in § 2244(b)(2). This section indicates that a petition could escape dismissal as second or successive where "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence" (and "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense"), 28 U.S.C. § 2244(b)(2). This language echoed—and toughened—the common law view that a petitioner had to bring any available claims at the

earliest opportunity.  *See United States v. Lopez*, 577 F.3d 1053, 1060–61 (9th Cir. 2009) ("Congress enacted AEDPA, codifying the judicially established principles reflected in the abuse-of-the-writ doctrine and further restricting the availability of relief to habeas petitioners.")

Following the enactment of AEDPA, the Supreme Court has continued to use "pre-AEDPA law to interpret AEDPA's provision governing 'second or successive habeas applications.'"  *Slack*, 529 U.S. at 486 (quoting *Stewart v. Martinez-Villareal*, 523 U.S. 637, 641–42 (1998)); *see also Buenrostro*, 638 F.3d at 724 (stating that in *Magwood*, 561 U.S. at 332, "seven justices agreed that second or successive is a habeas 'term of art' that incorporates the pre-AEDPA abuse-of-the-writ doctrine").

## B

Notwithstanding the prohibition of second or successive petitions in most cases, not every petition filed after an initial petition has been adjudicated is considered second or successive.  The Supreme Court has identified two situations where a second-in-time petition is not analyzed under the rules governing second or successive petitions.

First, in *Magwood*, the Supreme Court explained that the limitations imposed by § 2244(b) applied only to habeas petitions that relate to a specific "judgment of a State court" under § 2254(b)(1).  561 U.S. at 332 (emphasis omitted). Because "the phrase 'second or successive' must be interpreted with respect to the judgment challenged," *id.* at 333, a habeas petition is second or successive only if it challenges the same judgment as the prior petition, *see id.* at 339.  *Magwood* applied this rule and concluded that because the petitioner's new sentence, imposed after a resentencing proceeding, qualified as a new judgment, his "first

application challenging that new judgment" was not "second or successive." *Id.* at 331.

Second, even if a petitioner's second petition is challenging the same judgment as an earlier petition, it is not second or successive if it raises a claim "brought in an application filed when the claim is first ripe." *Panetti*, 551 U.S. at 947. The Court has clarified that a petitioner does not run afoul of the abuse of the writ doctrine by raising a new claim in a successive petition that could not have been raised in a prior petition. *Martinez-Villareal*, 523 U.S. at 645; *McCleskey*, 499 U.S. at 497.

The Supreme Court applied these abuse-of-the-writ principles, post-AEDPA, for the first time in *Panetti*. There, the petitioner, a capital defendant, raised a mental incompetence claim about his ability to stand trial in his first federal habeas petition, which was denied. 551 U.S. at 937. After the state trial court set the execution date, the petitioner filed a second habeas petition based on his claim that he was incompetent to be executed, pursuant to *Ford v. Wainwright*, 477 U.S. 399 (1986). *Id.* at 938–39. The district court stayed the petitioner's execution to allow him to exhaust this claim in state court. *Id.* The state court rejected this claim after various evidentiary proceedings. *Id.* at 939–40. The petitioner then returned to federal district court raising his now exhausted mental competence claim. *Id.* at 941. The court denied the petitioner's claim on the merits, and the appellate court affirmed. *Id.* at 941–42.

The Supreme Court first considered whether it had jurisdiction to consider the petitioner's appeal. *Id.* at 942. Although the second petition was second or successive on its face because it challenged the same judgment as the first petition, the Court held that "Congress did not intend the

provisions of AEDPA . . . to govern a filing in the unusual posture presented here: a § 2254 application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe." *Id.* at 945.[4] Further, the Court held that petitioner's actions did not constitute an abuse of the writ, because "claims of incompetency to be executed remain unripe at early stages of the proceedings." *Id.* at 947. Therefore, the Supreme Court held that "[t]he statutory bar on second or successive applications does not apply to a *Ford* claim brought in an application filed when the claim is first ripe." *Id.* The Court therefore proceeded to the merits of the claim.

After *Panetti*, we have applied the judge-made rule that a petition filed when a claim first becomes ripe is not second or successive in a range of cases beyond the context of *Ford* claims. *See Buenrostro*, 638 F.3d at 725. In general, "[p]risoners may file second-in-time petitions based on events that do not occur until a first petition is concluded," and such petitions are not second or successive, *id.*, because a claim does not become ripe until the facts that give rise to the constitutional claim first arise. To illustrate this principle, we stated that a "prisoner whose conviction and sentence were tested long ago may still file petitions relating to denial of parole, revocation of a suspended sentence, and the like because such claims were not ripe for adjudication at the conclusion of the prisoner's first federal habeas proceeding." *Id.* (collecting cases). Our sister circuits have arrived at the same conclusion, holding that claims that could not have been raised in a prisoner's earlier habeas petition because the alleged violations giving rise to the claims had

---

[4] The petitioner's *Ford* claim became ripe when his execution was imminent. *See Martinez-Villareal*, 523 U.S. at 644–45.

not yet occurred do not implicate the gatekeeping requirements of § 2244(b).[5]

## II

## A

We now turn to the facts of this case.[6] In January 1995, Robin Williams was at a home shared by Brown, Wanda Fain, and Joseph Diggs, when the police arrived in response to reports of a domestic disturbance nearby. *Muniz*, 889 F.3d at 664. They found Brown holding drugs and a firearm in the doorway. *Id.* The police arrested Brown and Williams. *Id.* Williams told the police that she had seen Brown with both the drugs and the firearm. *Id.* About ten days later, while Brown was awaiting trial on drug charges stemming

---

[5] The following cases from five of our sister circuits held that a prisoner's petition was not second or successive because it raised a claim that had not been ripe at the time of the initial petition. *See United States v. Orozco–Ramirez*, 211 F.3d 862, 869 (5th Cir. 2000) (holding that a claim relating to counsel's ineffective assistance on an out-of-time appeal could not have been raised in the first appeal); *In re Jones*, 652 F.3d 603, 605 (6th Cir. 2010) (order) (holding that an ex post facto claim resulting from amendments to state parole law was unripe until the amendments were enacted); *United States v. Obeid*, 707 F.3d 898, 903 (7th Cir. 2013) (holding that an equal protection challenge was unripe until the government breached its promise to treat the petitioner and a co-conspirator equally with respect to a motion for a sentence reduction); *Morgan v. Javois*, 744 F.3d 535, 538 (8th Cir. 2013) (holding that "a challenge to a state-court decision regarding the legality of an insanity acquittee's continued confinement is unripe until that decision is rendered"); *In re Weathersby*, 717 F.3d 1108, 1110–11 (10th Cir. 2013) (per curiam) (holding that a petitioner's habeas claim to correct a sentencing enhancement based on a state conviction was not ripe until the state vacated that conviction).

[6] Because we have already set out the facts in detail in *Brown v. Muniz*, 889 F.3d 661 (9th Cir. 2018), we recite them only briefly here.

from this arrest, Brown and Fain threatened Williams in an effort to persuade her not to testify against Brown. *Id.* On the day of the attempted murder, Williams arrived at Brown and Fain's residence and saw them talking (Diggs was also there). *Id.* Williams left, but returned five minutes later to find that Brown had left the residence. *Id.* Fain asked Williams to go with her to a house of prostitution to earn money for drugs. *Id.* Williams agreed, and left with Fain and Diggs. *Id.* Williams, Fain, and Diggs offered divergent accounts of what occurred after they left the residence. Williams testified that while she and Fain were walking down the street, laughing and talking, with Diggs following behind, Williams was shot in the back of the head by someone in a car following behind her. *Id.* at 665. Brown, Fain, and Diggs were prosecuted for conspiracy to commit murder, *id.* at 663, pursuant to sections 182 (defining conspiracy) and 187 (defining murder) of the California Penal Code, as well as for attempted murder of Williams, *id.*, pursuant to sections 187, 189 (defining the degrees of murder), and 664 (defining attempt) of the California Penal Code. Under California law at the time of the shooting, section 187 defined murder as the "unlawful killing of a human being . . . with malice aforethought." The mens rea of "malice" was defined in section 188.[7]

---

[7]At the time, section 188(a) of the California Penal Code provided:

> (a) For purposes of Section 187, malice may be express or implied.
> (1) Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature.

Brown was convicted of one count of conspiracy to commit murder and one count of attempted murder on an aiding and abetting theory, and sentenced to 56 years to life in state prison. *Muniz*, 889 F.3d at 663. Fain and Diggs were also convicted. *Id*. The California Court of Appeal affirmed Brown's conviction and sentence in 1998. On the charge of aiding and abetting attempted murder, the state court determined that the jury "could have reasonably concluded that Brown at least intended to aid and abet Fain and Diggs in the attempted murder, even if he did not personally intend to kill Williams." *Id.* at 665. The California Supreme Court denied review. *Id.*

## B

In 1998, after the California Court of Appeal affirmed his convictions, Brown filed his first petition for habeas corpus in federal district court. *Id.* The court denied the writ on the merits and declined to grant a certificate of appealability (COA). *Id.* We also declined to grant a COA, thus ending Brown's first habeas effort in 1998.[8] *Id.* In 2014, Brown filed a second habeas petition in federal district court, alleging that previously undisclosed information contained in three police officers' personnel files was subject to disclosure under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *Id*. at 665–66. On February 23, 2016, the district court dismissed Brown's petition, holding that it was a second or successive petition requiring pre-filing

---

(2) Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.

Cal. Penal Code § 188(a).

[8] An appeal may not be taken from the final order in a habeas proceeding unless the petitioner first obtains a COA. *See* 28 U.S.C. § 2253(c).

authorization from the Ninth Circuit under 28 U.S.C.
§ 2244(b)(3)(A). *Brown v. Asuncion*, 2016 WL 705987, at
*5 (N.D. Cal. Feb. 23, 2016). We affirmed the dismissal on
May 8, 2018. *Muniz*, 889 F.3d at 663.

C

After the district court dismissed Brown's second habeas
petition, the California legislature amended the law relating
to accomplice liability for murder, pursuant to Senate Bill
1437 (effective January 1, 2019). *People v. Bucio*, 48 Cal.
App. 5th 300, 307 (2020). The legislature found that it was
"necessary to amend the felony murder rule and the natural
and probable consequences doctrine as it relates to murder,
to ensure that murder liability is not imposed on a person
who is not the actual killer, did not act with the intent to kill,
or was not a major participant in the underlying felony who
acted with reckless indifference to human life." *People v.
Alaybue*, 51 Cal. App. 5th 207, 212–13 (2020) (quoting
Stats. 2018, ch. 1015, § 1).[9]

---

[9] The two doctrines amended by the California legislature—the felony-murder rule and the natural and probable consequences doctrine—are defined in California law as follows. First,

> [t]he felony-murder rule makes a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state. . . First degree felony murder is a killing during the course of a felony specified in section 189, such as rape, burglary, or robbery. Second degree felony murder is 'an unlawful killing in the course of the commission of a felony that is inherently dangerous to human life but is not included among the felonies enumerated in section 189 . . . .'

*People v. Chun*, 45 Cal. 4th 1172, 1182 (2009) (citation omitted).

Senate Bill 1437 made three changes to implement these legislative findings. First, Senate Bill 1437 changed the definition of "malice" in section 188 by adding a new provision stating that "[m]alice can no longer 'be imputed to a person based solely on his or her participation in a crime.'" *Bucio*, 48 Cal. App. 5th at 307. (alteration omitted).

Second, the bill changed the felony-murder rule by adding section 189(e), which provides that a defendant cannot be held liable for murder that occurs in the course of a felony unless the defendant was the actual killer (or "a major participant" in the conduct leading to murder) and had the requisite mens rea.[10] *Id.* As the legislature "stated in the uncodified statutory findings," "'[a] person's culpability for

---

Second, under the natural and probable consequences doctrine, a defendant who aids and abets another in the commission of a crime is guilty not only of that crime, but also of any other crime that the other person commits if it is a natural and probable consequence of the crime originally aided and abetted. *See People v. Prettyman*, 14 Cal. 4th 248, 254 (1996). For example, "if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault." *People v. McCoy*, 25 Cal. 4th 1111, 1117 (2001).

[10] Section 189(e) of the California Penal Code provides:

A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:
(1) The person was the actual killer.
(2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.
(3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.

murder must be premised upon that person's own actions and subjective mens rea.'" *Alaybue*, 51 Cal. App. 5th at 213 (citing Stats. 2018, ch. 1015, § 1.)

Third, Senate Bill 1437 added section 1170.95, which provides a procedure for a defendant convicted of felony murder or murder under a "natural and probable consequences" theory to obtain retroactive relief. *Id.* (citing Cal. Penal Code § 1170.95(a)).[11]   To seek relief under section 1170.95, a petitioner must make a prima facie case that the petitioner could not be convicted of first or second degree murder due to the changes in section 188 or 189.[12] The sentencing court must then review the application and determine whether the petitioner "has made a prima facie case for relief."   Cal. Penal Code § 1170.95(c).   If the petitioner has made a prima facie case, then the court must hold an evidentiary hearing regarding whether the petitioner is entitled to relief.   *Id.* § 1170.95(d)(1).   At the hearing

---

[11] Section 1170.95 did not address the crimes for which Brown was convicted:  attempted murder and conspiracy to commit murder.

[12] Specifically, the petitioner had to file a petition in the sentencing court stating that:

> (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;]
> (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [and]
> (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.

Cal. Penal Code § 1170.95(a)(1)–(3).

stage, "the burden of proof [is] on the prosecution to prove, beyond a reasonable doubt," that the petitioner is "guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189." *Id*. § 1170.95(d)(3). If the prosecution fails to carry its burden, "the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." *Id.*

## D

In February 2019, shortly after the effective date of Senate Bill 1437, Brown filed an application for resentencing in state court pursuant to section 1170.95. Brown's theory was that because he had not been the shooter or a major participant in the killing, and did not have the requisite mens rea, his conviction for conspiracy to commit murder had to be vacated.[13] The state court denied his application. It reasoned that section 1170.95 did not apply to conspiracy to commit murder, and "it does not look like the felony murder rule was involved or [the] natural probable consequences rule was involved in Mr. Brown's conviction." Therefore, the state court found that Brown had failed to make a prima facie showing of eligibility for relief. The California Court of Appeal affirmed the trial court's judgment in November 2020, and the California Supreme Court affirmed the state court's denial of Brown's application for resentencing in January 2021.

---

[13] The state trial court considered only Brown's conviction for conspiracy to commit murder and the record does not indicate whether Brown raised an argument regarding his conviction for attempted murder to the highest state court.

## E

In May 2020, while Brown's appeal of this denial to the California Court of Appeal was still pending, Brown filed his third federal habeas petition [Case No. 20-16290]. In this petition, he argued that he was entitled to resentencing under section 1170.95 for conspiracy to commit murder and attempted murder, and that his continued incarceration under the original sentence violated his due process rights. The district court dismissed the petition as a second or successive petition because Brown did not have "an order authorizing the district court to consider the application" as required by 28 U.S.C. § 2244(b)(3)(A). Brown then applied for a COA, claiming that the district court erred in ruling that his petition was second or successive because his petition was based on the change in law enacted by Senate Bill 1437. The district court did not act on the COA, and Brown filed a notice of appeal in June 2020. In July 2020, we remanded the case to the district court for the limited purpose of granting or denying the COA. The district court denied the COA, holding that jurists of reason would agree that the petition was second or successive, and again noting that Brown had not obtained permission to bring such a claim.

Brown filed his fourth federal habeas petition in April 2021 [Case No. 21-15922] in which he alleged, among other things, that he was denied effective assistance of counsel in applying to the state court for resentencing pursuant to section 1170.95. He also argued that the state court's denial of his application violated his equal protection rights because he was treated differently from other prisoners who had been convicted of first-degree murder under the natural and probable consequences doctrine, and were then resentenced pursuant to the procedure in section 1170.95. In May 2021, the district court dismissed this petition as second or

successive because it was "attacking the same conviction and sentence as [Brown's] prior federal habeas petition." Later the same month, Brown filed a notice of appeal and an application for a COA. In August 2021, the district court granted a COA because Brown was not challenging his conviction and sentence, but was instead claiming his lawyer rendered ineffective assistance in connection with the application for a resentencing hearing. At the same time, the district court overruled its own earlier order denying a COA as to the May 2020 petition, and instead granted a COA on the ground that Brown was not attacking his prior conviction, but rather challenging the denial of his motion for resentencing.

We granted Brown's unopposed motion to consolidate his appeals of the two federal habeas cases related to his resentencing denial.

We have jurisdiction pursuant to 28 U.S.C. § 2253. Under AEDPA, we review de novo the district court's decision that a petition is second or successive. *Lopez*, 577 F.3d at 1059; *see also Thompson v. Calderon*, 151 F.3d 918, 921 (9th Cir. 1998) (en banc). The only question before us is whether the district court erred in dismissing Brown's three constitutional claims in his May 2020 and April 2021 habeas petitions as second or successive pursuant to 28 U.S.C. § 2244(b).

## III

We begin by considering the exception established in *Panetti*: that a petition is not second or successive when it raises claims that were not ripe at the time a prior petition was filed.

Brown raised three constitutional claims to the district court: a violation of his due process rights, a violation of his equal protection rights, and ineffective assistance of counsel.[14]  Each of these claims related to his application for resentencing under section 1170.95 and the denial of his application on March 8, 2019.  We consider whether the events that gave rise to Brown's constitutional claims occurred before either his first or second petitions were denied or dismissed (in 1998 and 2016, respectively).  If so, Brown's claims could have been brought in either petition and—consistent with pre-AEDPA abuse of the writ doctrine requiring claims to be brought at the earliest opportunity— his petitions are "second or successive."  *Panetti*, 551 U.S. at 947; *see also Buenrostro*, 638 F.3d at 725–26 (noting "Congress' clear intent to prohibit us from certifying second- in-time claims, ripe at the time of a prisoner's [habeas] proceeding but not discovered until afterward," unless a statutory exception applies).

We conclude that Brown's due process, ineffective assistance of counsel, and equal protection claims did not become ripe until March 2019, when his application for resentencing was denied, which occurred well after the district court denied his first and dismissed his second habeas petitions.  In his third petition, Brown alleged a due process violation resulting from his continued confinement after the denial of his application for resentencing.  Because

---

[14]  The record does not indicate whether Brown raised his due process, equal protection, and ineffective assistance of counsel claims in his third and fourth federal habeas petitions to the highest state court, or instead challenged only state law errors.  It is well established that "'federal habeas corpus relief does not lie for errors of state law.'"  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)).

his application for resentencing was denied on March 8, 2019, his claim did not ripen until after that date, when he remained confined.  *See Morgan*, 744 F.3d at 538.  In his fourth petition, Brown alleged that his attorney rendered ineffective assistance by failing to prepare properly for the hearing on his application for resentencing.**15**  Because Brown must show both deficient performance and prejudice in order to raise an ineffective assistance of counsel claim, his claim did not arise until after his application was denied on March 8, 2019.  Finally, Brown's equal protection claim (also in his fourth habeas petition) was based on his claim that in denying his resentencing application, the state court treated him differently from other prisoners who were resentenced.  Again, the facts underlying this claim did not arise until his resentencing application was denied in March 2019.  *See Obeid*, 707 F.3d at 903.

Because Brown's due process, equal protection, and ineffective assistance of counsel claims were not ripe when his first federal habeas petition was denied by the district court or when his second habeas petition was dismissed by the district court, Brown could not have raised these claims in his first or second petition, so his failure to do so is not an abuse of the writ.  Therefore, the third and fourth habeas petitions were not second or successive under 28 U.S.C.

---

[15] We leave for the district court to determine on remand, if necessary, whether the fourth petition filed on May 2021 should be construed as an amendment to the third petition filed on April 2020. *See Woods v. Carey*, 525 F.3d 886, 889 (9th Cir. 2008).  For purposes of this opinion, we treat the two petitions as if they were a single petition.

§ 2244(b).**[16]** *See Panetti*, 551 U.S. at 947; *Buenrostro*, 638 F.3d at 725.

Because Brown's third and fourth petitions were not second or successive petitions, Brown could bring them without qualifying for an exception under § 2244(b)(2)(B), and without obtaining our permission to authorize the district court to consider them, 28 U.S.C. § 2244(b)(3)(A). Accordingly, we conclude that the district court erred by dismissing the petitions for failing to follow the requirements applicable to second or successive petitions.**[17]** Because we decide on this ground, we do not reach the parties' argument that, under *Magwood*, the state court's denial of Brown's application for resentencing under section 1170.95 constituted a new judgment for purposes of § 2254.

**REVERSED AND REMANDED**.

---

[16] Although Brown filed his third habeas petition in May 2020 (over a year after his claims ripened) and his fourth habeas petition in April 2021 (over two years after his claims ripened), the government does not argue that Brown abused the writ by not bringing the claims "as soon as" they were "first ripe," *Panetti*, 551 U.S. at 945, 947, so any such argument is forfeited, *see Williams v. United States*, 927 F.3d 427, 439 (6th Cir. 2019).

[17] The government has not forfeited the argument that Brown failed to exhaust his challenges to the conviction for attempted murder or his constitutional claims. *See* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."). On remand, if the district court determines that Brown's claims are not barred by AEDPA's statute of limitations, 28 U.S.C. § 2244(d)(1)(D), the district court may consider whether it may stay the habeas proceedings to allow Brown to exhaust any unexhausted claims, *see Rhines v. Weber*, 544 U.S. 269, 276–77 (2005); *Mena v. Long*, 813 F.3d 907, 912 (9th Cir. 2016) (applying *Rhines* to a petition that raises only exhausted claims).

IKUTA, Circuit Judge, concurring:

We hold today that Brown's petition is not second or successive because he raises a claim that was not ripe at the time his prior petitions were filed. Nevertheless, we do the parties a disservice by declining to address their primary argument in this case.

In his opening brief on appeal, Brown relied on an argument based on our decision in *Clayton v. Biter*, 868 F.3d 840 (9th Cir. 2017). As explained in more detail below, *Clayton* held that the denial of a motion for resentencing under section 1170.126 of the California Penal Code constituted a new judgment, and that a habeas petition challenging that new judgment was not second or successive for purposes of 28 U.S.C. § 2244(b).[1] *Id*. at 843. Brown argued that the same reasoning applied to the denial of his motion for resentencing under section 1170.95 of the California Penal Code. Underlining the importance of this argument, the government conceded that under the reasoning of *Clayton*, the state trial court's order denying Brown's petition for resentencing constituted a new, appealable judgment. Nor are the parties alone in relying on *Clayton* in this context. District courts in our circuit have consistently relied on *Clayton* to conclude that the denial of resentencing under section 1170.95 is a new judgment, such that challenges to such a denial are not second or successive.[2]

---

[1] As noted in the majority decision, the Supreme Court has made clear that a habeas petition is second or successive only if it challenges the same judgment as the prior petition, not a new judgment. *See Magwood v. Patterson*, 561 U.S. 320, 331 (2010).

[2] *See, e.g.*, *Allen v. Madden*, 2021 WL 4731342, at *3 (C.D. Cal. Apr. 12, 2021), *report and recommendation adopted*, 2021 WL 4732581 (C.D. Cal. May 5, 2021); *Vasquez v. Allison*, 2021 WL 1164470, at *3

Moreover, multiple petitioners whose section 1170.95 applications for resentencing were denied in state court have pending motions seeking our permission to file a second or successive petition pursuant to 28 U.S.C. § 2244(b)(3)(A).[3] There is no question that we have authority to consider whether the denial of resentencing under section 1170.95 is a new judgment: "[p]anels often confront cases raising multiple issues that could be dispositive, yet they find it appropriate to resolve several, in order to avoid repetition of errors on remand or provide guidance for future cases." *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc) (per curiam) (Kozinski, J., concurring); *see also United States v. Vallejo*, 237 F.3d 1008, 1026 n.9 (9th Cir. 2001) (recognizing four "independent grounds for reversal" and remanding for a new trial). Indeed, when we give "clear direction to the district court on how to proceed" with respect to an issue raised by the parties, it is "binding precedent, even if characterized as an alternative holding." *Operating Eng'rs Pension Tr. v. Charles Minor Equip. Rental, Inc.*, 766 F.2d 1301, 1304 (9th Cir.), *amended*, 778 F.2d 538 (9th Cir. 1985). For the reasons explained below, we should hold that the state court's denial of Brown's application for

---

(C.D. Cal. Mar. 24, 2021); *Young v. Cueva*, 2020 WL 8455474, at *2 (C.D. Cal. Oct. 27, 2020); *Kirkpatrick v. Foss*, 2019 WL 4859062, at *1 (C.D. Cal. Oct. 2, 2019); *Esparza v. Lizarraga*, 2019 WL 6749449, at *5 (C.D. Cal. Aug. 7, 2019), *report and recommendation adopted*, 2019 WL 5589040 (C.D. Cal. Oct. 28, 2019).

[3] *See Prado v. Cueva*, Case No. 21-71427; *Torlucci v. Allen*, Case No. 22-155; *Fegan v. Matterson*, Case No. 22-722; *Cole v. Cates*, Case No. 22-1119; *George v. Cisneros*, Case No. 22-1496; *Khan v. Broomfield*, Case No. 22-1497; *Cervantes v. Cisneros*, Case No. 22-1600; *Millender v. Cates*; Case No. 22-1755.

resentencing under section 1170.95 did not constitute a new judgment for purposes of § 2254.

I

In considering the question whether Brown's petitions are challenging a new judgment, we must apply California law because "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam). We "look to state law to determine what constitutes a new or intervening judgment." *Clayton*, 868 F.3d at 844.

California courts have determined that when a prisoner submits an application to a state trial court claiming prima facie eligibility for relief under section 1170.95, the trial court's initial eligibility determination regarding resentencing is only the first step in a multi-step process that may result in a resentencing. *See People v. Hampton*, 74 Cal. App. 5th 1092, 1101 (2022). As such, the first step, without more, does not change a prisoner's sentence and is therefore not a new judgment. *Id.* In *Hampton*, a state trial court held that a prisoner convicted of murder had made a prima facie case that he was entitled to relief under section 1170.95. *Id.* at 1098. After an evidentiary hearing, the court held that the government failed to carry its burden of proving the prisoner was ineligible for relief, and therefore issued an order granting the application under section 1170.95. *Id.*[4]

When the government appealed the order granting the application, the prisoner argued that the government could not appeal. *Id*. at 1100. The prisoner reasoned that the "right to appeal is statutory, and appeals that do not fall within the

---

[4] The state trial court subsequently vacated the murder conviction and resentenced the prisoner. *Id.*

exact statutory language" of section 1238 of the California Penal Code "are prohibited." *Id.* (citing *People v. Salgado*, 88 Cal. App. 4th 5, 11 (2001)). Because section 1238 did not allow an appeal from a final judgment in a criminal case, *id.* at 1101–02, the prisoner argued that the government could not appeal the order granting resentencing, which constituted a new judgment, *id.* at 1101.

The California Court of Appeal rejected this argument. The court first noted that section 1238 allows the government to appeal "[a]n order made after judgment, affecting the substantial rights of the people." *Id.* at 1101. The court explained that the government was challenging the trial court's conclusion that the prisoner was entitled to relief. *Id.* at 1102. This was a preliminary decision "that then required the court to vacate the murder conviction and resentence [the] defendant," not a new sentence imposed in a resentencing hearing (which would be a final judgment). *Id.*; *see also People v. McKenzie*, 25 Cal. App. 5th 1207, 1213 (2018), *aff'd*, 9 Cal. 5th 40 (2020) ("In a criminal case, the sentence is the judgment."). Because "the trial court's order finding defendant entitled to relief under section 1170.95" was merely a threshold ruling, it was an appealable post-judgment order, not a new judgment. *Hampton*, 74 Cal. App. 5th at 1102.

## II

The same reasoning applies here. Brown's third and fourth federal habeas petitions are challenging an order denying his eligibility for relief under section 1170.95. According to *Hampton*, a prima facie determination regarding eligibility for resentencing under section 1170.95 does not constitute a new judgment. 74 Cal. App. 5th at 1101. Therefore, Brown's petitions are not challenging a

"new judgment" as in *Magwood*, but are instead challenging a post-judgment order and asking for resentencing, which would entail vacatur of his original sentence. The rule that a petition challenging a new judgment is not second or successive is therefore inapplicable. *See Magwood*, 561 U.S. at 332–33.

Brown argues that, notwithstanding *Hampton*, our decision in *Clayton* compels the conclusion that the denial of a petition for resentencing relief should be viewed as a new judgment. This argument fails. *Clayton* involved the procedure for implementing California's Three Strikes Reform Act of 2012 (which requires that a third strike generally has to be a serious or violent felony). *See* 868 F.3d at 842. Section 1170.126 of the California Penal Code provides a procedure for prisoners sentenced under the prior Three Strikes law to apply for resentencing. *Id.* Recognizing that under California law, a prisoner may take an appeal from any post-judgment order "affecting the substantial rights of the party," *id.* at 844 (citing Cal. Penal Code § 1237), *Clayton* held that "a denial of a resentencing petition under section 1170.126" qualifies as "an appealable 'postjudgment order affecting the substantial rights of the party, '" *id*. (quoting *Teal v. Superior Ct.*, 60 Cal. 4th 595, 598 (2014)). This is consistent with *Hampton*. *See* 74 Cal. App. 5th at 1102. But instead of stopping there, *Clayton* added, without explanation, that such a denial was not only an appealable post-judgment order, but also constituted a new judgment. *See* 868 F.3d at 844 (holding that because "under California law, a resentencing petition does not challenge the underlying conviction or sentence" but seeks a resentencing proceeding, "[t]he denial of [the petitioner's] section 1170.126 petition therefore constitutes a new judgment."). Therefore, *Clayton* concluded that a state

prisoner's second-in-time federal habeas petition challenging an order denying the prisoner's application for resentencing pursuant to section 1170.126 was not second or successive, because it challenged a new judgment. *Id.* at 846.

In reaching this conclusion, *Clayton* did not have the benefit of *Hampton*, which made clear that an order addressing prima facie eligibility for relief from a sentence is only a post-judgment *order*, not a new *judgment*. Because *Hampton* was decided after *Clayton*, and is directly on point in addressing section 1170.95, we are bound by *Hampton*, not *Clayton. Cf. Ocwen Loan Servicing, L.L.C. v. Berry*, 852 F.3d 469, 473 (5th Cir. 2017) (holding that "[i]n diversity cases"—where state court decisions likewise bind us—"we are to follow subsequent state court decisions that are clearly contrary to a previous decision of this court" (citation omitted)). Therefore, Brown's reliance on *Clayton* and his reading of *Hampton* are unavailing.

The government also misreads *Hampton*. It argues that although *Hampton* held that an order granting relief under section 1170.95 was not a *custodial* judgment, the order in this case was distinguishable because it was an appealable post-judgment order that constituted a new legal event separate from the original custodial judgment. As such, the government argues, it can be challenged by a second habeas petition. This argument fails. The Supreme Court has clarified that a habeas petitioner must "ask for relief from the state court judgment contested" (under which a prisoner is incarcerated). *Magwood*, 561 U.S. at 334 n.9 (citation and internal quotation marks omitted). Brown's application under section 1170.95 is an application to vacate the state court judgment authorizing Brown's current confinement. Because the state has determined that the denial of such an

application is not itself a new judgment, *see Hampton*, 74 Cal. App. 5th at 1101, Brown cannot escape the second or successive bar on the basis of the denial of resentencing being a new legal event. Regardless whether it is a new legal event, it is not a new custodial judgment under *Magwood*, and is therefore irrelevant to the second or successive inquiry. Therefore the government's attempt to distinguish *Hampton* is unavailing.

III

Because *Clayton* has caused confusion for prisoners, the government, and the district courts regarding the import of a denial of a motion for resentencing, we should ensure the public receives "the normal law-clarifying benefits that come from an appellate decision on a question of law." *Pierce v. Underwood*, 487 U.S. 552, 561 (1988). "The role of the appellate court in theory, of course, is to right the legal wrongs that occur in the district courts and, in the course of so doing, to explain to the parties the error in the arguments they advance in defense of and challenge to the district court's judgment." *Kentuckians for the Commonwealth, Inc. v. Rivenburgh*, 317 F.3d 425, 449 (4th Cir. 2003) (Luttig, J., concurring in part and dissenting in part). We should do so here.